**PITTSBURGH LIMOUSINE, INC., Petitioner**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, BUREAU OF TRANSPORTATION AND SAFETY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2000.

Decided Nov. 30, 2000.

David S. Klett, Pittsburgh, for petitioner.

Stanley E. Brown, Harrisburg, for respondent.

Before KELLEY, Judge, LEADBETTER, Judge, and LEDERER, Senior Judge.

KELLEY, Judge.

Pittsburgh Limousine, Inc. (PLI) petitions for review of two orders of the Pennsylvania Public Utility Commission (PUC). We affirm.

The PUC order of October 6, 1998 granted the Bureau of Transportation and Safety's (Bureau) petition for interlocutory review requesting that the Bureau not be required to institute discovery measures to locate a witness, Ms. Carmen Bass, or to provide PLI with Ms. Bass's address. The October 6, 1998 order additionally denied PLI's request to dismiss the instant case with prejudice.

The PUC order of October 18, 1999 granted in part the Bureau's exceptions to an Administrative Law Judge's (ALJ) Initial Decision that dismissed the Bureau's complaint seeking to recover unpaid delinquent assessments made against PLI. The October 18, 1999 order also reversed the ALJ's Initial Decision, sustained in part the Bureau's complaint, and ordered PLI to pay $21,765 in unpaid and delinquent assessments.

The relevant facts of this case may be summarized as follows. During the period from 1992 through 1997, PLI mistakenly reported to the Bureau revenues earned in Allegheny County that were not subject to assessment by the Bureau due to the Bureau's lack of jurisdiction in Allegheny County. In accordance with Section 510 of the Public Utility Code, 66 Pa.C.S. § 510,[1]

1. Section 510 reads, in relevant part:

(b) Allocation of assessment.—On or before

the Bureau sent to PLI assessment notices in each of the years at issue based upon PLI's reported revenues. Each of those assessment notices contained express language notifying PLI that it had fifteen days in which to file objections to the assessments, if those assessments were believed by PLI to be excessive, erroneous, unlawful, or invalid. PLI did not file timely objections in any of the years in question.

A PUC order of February 25, 1988 (granting authority for operation to PLI), and a letter dated March 1, 1988 from PLI's counsel to the PUC, each contained express references to the Bureau's lack of jurisdiction within Allegheny County. Certified Record at Tab 33, Appendices A and B. PLI does not dispute its receipt of the February 25, 1988 order, and does not dispute or deny the correspondence of its counsel to the PUC, dated March 1, 1988, articulating PLI's understanding that the PUC lacks jurisdiction over services rendered by PLI within Allegheny County. Notwithstanding, PLI contends that it was not aware of the exemption of Allegheny County revenue from the PUC's revenue and assessment requirements until some time in 1996. At that time, upon learning of its mistake in reporting those revenues,

PLI contacted Ms. Bass, an employee of the Bureau, to object to and resolve the assessments at issue. As a result of alleged conversations with Ms. Bass, PLI paid a $3484.00 assessment for the period 1994–95, and thereafter believed that no further assessment monies were owed by PLI due to the revenue reporting error. PLI thereafter filed amended revenue reports with the Bureau, excluding the exempt Allegheny County revenues therefrom. No action was taken by the Bureau in the wake of those amendments by PLI.

In February of 1998, the Bureau filed a complaint against PLI seeking to collect public utility assessments owed based upon PLI's reported gross intrastate operating revenues for the period 1992 through 1997. A hearing was scheduled before an ALJ. At a prehearing conference, the Bureau, PLI and the ALJ agreed that the Bureau would produce Bureau employee Ms. Bass at the hearing scheduled for July 2, 1998. On June 24, 1998, PLI sought relief from the ALJ due to the Bureau's refusal to produce Ms. Bass as a witness as previously agreed. The Bureau averred that Ms. Bass had left the Bureau's employ effective June 26, 1998. After the completion of the hearing on July 2, 1998,

March 31 of each year, every public utility shall file with the commission a statement under oath showing its gross intrastate operating revenues for the preceding calendar year.

* * *

(c) Notice, hearing and payment.—The commission shall give notice by registered or certified mail to each public utility of the amount lawfully charged against it under the provisions of this section, which amount shall be paid by the public utility within 30 days of receipt of such notice, unless the commission specifies on the notices sent to all public utilities an installment plan of payment, in which case each public utility shall pay each installment on or before the date specified therefor by the commission. Within 15 days after receipt of such notice, the public utility against which such assessment has been made may file with the commission objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, erroneous, unlawful or invalid.

The commission, after notice to the objector, shall hold a hearing upon such objections. After such hearing, the commission shall record upon its minutes its findings on the objections and shall transmit to the objector, by registered or certified mail, notice of the amount, if any, charged against it in accordance with such findings, which amount or any installment thereof then due, shall be paid by the objector within ten days after receipt of notice of the findings of the commission with respect to such objections. If any payment prescribed by this subsection is not made as aforesaid, the commission may suspend or revoke certificates of public convenience, certify automobile registrations to the Department of Transportation for suspension or revocation or, through the Department of Justice, may institute an appropriate action at law for the amount lawfully assessed, together with any additional cost incurred by the commission or the Department of Justice by virtue of such failure to pay.

the ALJ issued an order dated July 7, 1998 requiring the Bureau to reveal the whereabouts of Ms. Bass or face the potential sanction of dismissal of its complaint.

On July 20, 1998 the Bureau filed with the PUC a petition for interlocutory review of the ALJ's July 7, 1998 order. On October 6, 1998, the PUC entered an opinion and order that reversed the ALJ's July 7, 1998 order, and further directed the ALJ to provide PLI with ample time to file an application for subpoena pursuant to the PUC's applicable rules and regulations.[2] The hearing before the ALJ was held on November 30, 1998, but PLI had not initiated the procedures to subpoena Ms. Bass before that hearing. In response to the October 6, 1998 order, PLI filed a petition for review thereof with this Court, which petition was quashed as interlocutory. The October 6, 1998 order is now the first of the two orders that are the subject of the instant petition for review to this Court.

Following the November 30, 1998 hearing on the merits of the Bureau's complaint, an Initial Decision was issued by the ALJ dismissing the Bureau's complaint on two separate grounds: (1) that the revenues upon which the assessments were based were not "public utility revenues", and therefore the Bureau was never intended to, and lacks jurisdiction to, collect assessments on such revenues notwithstanding the erroneous reporting of revenues by PLI, or PLI's failure to timely object thereto, and; (2) the Bureau failed to satisfy its burden of establishing by record evidence precisely how much PLI is claimed to owe in unpaid assessments. Additionally, the ALJ found that Section 510 of the Public Utility Code does not preclude a party from challenging an assessment that is based upon "non-jurisdictional" revenues.

The Bureau thereafter filed exceptions to the ALJ's Initial Decision, which the PUC granted, reversing the Initial Deci-

sion of the ALJ by order dated October 18, 1999. The PUC concluded, *inter alia,* that PLI was precluded from challenging the assessment amounts due to its failure to timely object to those assessments within fifteen days of their receipt. The October 18, 1999 order is the second order that is the subject of the instant petition for review to this Court.

■ We note that this Court's scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether the PUC's findings are supported by substantial evidence. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 122 Pa.Cmwlth. 445, 552 A.2d 1135 (1989).

PLI argues that: 1.) the PUC erred in reversing the ALJ's conclusion that the assessments in question were not within the Bureau's jurisdiction notwithstanding the fact that the revenues upon which they were based were erroneously reported by PLI, and notwithstanding PLI's failure to timely file exceptions to the assessments; 2.) the PUC's reversal of the ALJ's finding that the Bureau failed to meet its burden of establishing how much PLI owed in unpaid assessments is not supported by substantial evidence, and; 3.) the PUC erred, abused its discretion, and acted without jurisdiction in issuing its order of October 6, 1998 by failing to grant PLI's petition for interlocutory review within thirty days, and by invading the province and discretion of the ALJ in regards to discovery, pre-trial matters, and sanctions.

■ Before considering the merits of PLI's challenges, we must first determine whether PLI's appeal of the assessments at issue were timely filed in accordance with the provisions of Section 510, which specifically states that, following the notice by the PUC of the amount of the assessment charged to a utility, said amount:

shall be paid by the public utility within 30 days of receipt of such notice …

**2.** *See* 52 Pa.Code § 5.421.

Within 15 days after receipt of such notice, the public utility against which such assessment has been made may file with the [PUC] objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, erroneous, unlawful, or invalid.

Absent such timely objection by a utility, this Court is divested of jurisdiction to consider the instant appeal. *Accord Darroch v. Unemployment Compensation Board of Review,* 156 Pa.Cmwlth. 435, 627 A.2d 1235 (1993)(untimely appeal of assessment of employer's unemployment tax obligation cannot be considered, and divests Commonwealth Court of jurisdiction to hear appeal thereof); *Re Charles W. Foltz,* 66 Pa. PUC 496 (1988)(PUC has no discretion to consider the merits of a utility's untimely filed objections to assessment).

■ The certified record in this case shows that, for the period in question between 1993 and 1997, the PUC sent notices of assessment via certified mail that were received by PLI. Certified Record at Tab 32. PLI does not assert, and the record is devoid of any evidence whatsoever, that PLI filed any objection to any of those assessments within the fifteen day period mandated by Section 510(c). Further, that fifteen day period was additionally referenced and clearly articulated in the notice of assessment explanation sheet provided to PLI. Certified Record at Tab 32a. By so failing to timely object to the assessments at issue within fifteen days of their receipt, PLI cannot now challenge the assessments.

Accordingly, we affirm the orders of the PUC.[3]

### ORDER

AND NOW, this 30th day of November, 2000, the order of the Public Utility Commission dated October 18, 1999, at A–00107834C9801, and the order of the Public Utility Commission dated October 6, 1998, at A–00107834C9801, are affirmed.

---

**3.** Our decision on the October 18, 1999 order of the PUC renders unnecessary any further consideration of PLI's remaining issues in the instant appeal.