603 A.2d 279

**Peggy Ann GARDNER, Mary Jane Eckert and Barbara Judge, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 1991.

Decided Jan. 31, 1992.

Stanley R. Geary, Pittsburgh, for appellant.

Marc A. Roda, Harrisburg, for appellee.

Before CRAIG, President Judge, PELLEGRINI, J. and BARRY, Senior Judge.

PELLEGRINI, Judge.

Peggy Ann Gardner, Mary Jane Eckert and Barbara Judge (Landowners) appeal from an order of the Court of Common Pleas of Butler County (trial court) that sustained the preliminary objections of the Department of Environmental Resources (DER) and dismissed their Petition for Appointment of Viewers. The trial court reasoned that Landowners' de facto taking claim was not ripe because an administrative remedy was "arguably" available. For the following reasons, we will affirm the trial court.

On January 18, 1967, DER's predecessor agency, the Department of Forests and Waters (DFW), began condemnation proceedings against a 189.325 acre parcel owned by C.W. House and Mary P. Baker. Mining had taken place on all or some of this parcel prior to condemnation. The Declaration of Taking stated that the purpose of the condemnation was:

> [T]o provide land for recreational and conservational purposes, as said purposes are defined in the Project 70 Land Acquisition and Borrowing Act approved June 22, 1964; and the action taken hereby is necessary to permit the Commonwealth of Pennsylvania to regulate the passing of titles to lands in order to fulfill its obligations in meeting these objectives under mandate of the Legislature and the provisions of the said Project 70 Land Acquisition Act.

Reproduced Record (R.) at 12a. After its acquisition, the parcel became a part of Moraine State Park.

Although the initial Declaration of Taking sought to condemn a fee simple interest in the parcel,[1] a Declaration of Relinquishment was filed by DFW revoking the condem-

---

**1.** Excluding the interests of record of third parties (if any existed) in easements, rights-of-way, oil and gas rights, and deep veins of coal and associated mining rights. Paragraph 9 of the Declaration of Taking, R. at 13a.

nation with respect to strip and surface coal mining rights, and revesting those rights in the owners, House and Baker. The Declaration read in pertinent part as follows:

4. The Declaration of Relinquishment is intended to clarify Condemnor's position that in said Eminent Domain proceedings, Condemnor does not and did not intend to take, affect or disturb any rights of anyone pertaining to strip coal or surface mining of coal upon the premises condemned.

R. at 20a.

DFW further clarified its position in a letter to House from Maurice K. Goddard, Secretary of DFW, dated June 1, 1967, which stated:

Please note that the coal under this property is not required for the purposes of this project.

The Department has no objection to the removal of the coal, fire clay, other minerals and oil and gas currently in place under the surface and improvements acquired from you and Mrs. Baker, by stripping or by other standard recovery techniques.

R. at 21a.

At the time of the taking and relinquishment in 1967, surface mining in Pennsylvania was regulated by the Bituminous Coal Open Pit Mining Conservation Act (Act), Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §§ 1396.1–1396.21, which contained no prohibition against surface mining activities in public parks.

Mary Baker died in 1968, and devised her interests in the parcel to House. Landowners in this action are the daughters and sole heirs of House and hold by inheritance all interests in the parcel which were not taken by DFW in 1967; namely, the mineral rights and the right to surface mine not taken in the 1967 condemnation.

In 1971, the Act was extensively amended and re-titled the Surface Mining Conservation and Reclamation Act (Pa. SMCRA), Act of November 30, 1971, P.L. 554. Section 4.2(c) of Pa.SMCRA, 52 P.S. §§ 1396.4b(c), added in 1971,

only permits surface mining operations in a public park, as well as other areas by variance. That section provides:

> [W]ithin one hundred feet of the outside line of the right-of-way of any public highway or within three hundred feet of any occupied dwelling, unless released by the owner thereof, nor within three hundred feet of any public building, *public park,* school ... The secretary may grant operators' variances to the distance requirements herein established where he is satisfied that special circumstances warrant such exceptions, and that the interest of the public and landowners affected thereby will be adequately protected.... (Emphasis added.)

In 1980, however, Section 4.5 of Pa.SMCRA, 52 P.S. § 1396.4e, was added, prohibiting all surface mining in public parks except those subject to existing rights. That section provides: [2]

> Subject to valid existing rights as they are defined under § 522 of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 et seq. [Federal SMCRA], no surface mining operations except those which existed on August 3, 1977, shall be permitted:
>
> . . . .

**2.** Pa.SMCRA has been amended a number of times to bring it into conformity with The Federal Surface Mining and Control Act (Federal SMCRA), 30 U.S.C. §§ 1201–1328 enacted in 1977. This process has been summarized as follows:

> The federal act was passed in 1977, and established a nationwide program for dealing with the various problems arising from surface mining in the United States. The Act provides that because of differing problems and conditions from state to state, the 'primary governmental responsibility for developing, authorizing, issuing and enforcing regulations for surface mining and reclamation operations ... should rest with the states....' 30 U.S.C. § 1201(f). However, before the states are permitted to administer their own exclusive regulatory programs, the federal act requires each state to establish to the satisfaction of the Office of Surface Mining (OSM) that it has statutes that are 'in accordance with' the requirements of the federal act and that state regulations are 'consistent with' the regulations issued by the Secretary of the Interior pursuant to the federal act [30 U.S.C. § 1253(a)(1) and (7)].

*Pennsylvania Coal Mining Association v. Watt,* 562 F.Supp. 741, 743 (M.D.Pa.1983) (footnote omitted).

(5) within three hundred feet from any occupied dwelling, unless waived by the owner thereof, nor within three hundred feet of any public building, school, church, community, nor institutional building, *public park* or within one hundred feet of a cemetery. (Emphasis added.)

52 P.S. § 1396.4e(h).

Because of these changes to the Pennsylvania surface mining laws, Landowners, pursuant to 502(e) of the Eminent Domain Code,[3] filed a Petition for the Appointment of Viewers, claiming that the new regulations deprived them of their right to surface mine the coal they owned in Moraine State Park for which they were entitled to just compensation. DER filed preliminary objections to the Petition contending, *inter alia*, that Landowners, by failing to seek a variance pursuant to Section 4.2(c) of Pa.SMCRA, were precluded from filing a Petition and claiming that there had been a de facto taking, because they had not yet exhausted their administrative remedies to obtain permission to remove the coal under the previously condemned land in Moraine State Park. The trial court sustained DER's objection. The instant appeal followed.[4]

When deprivation of property occurs as a result of the enactment of laws, it is referred to as a regulatory taking. *See First English Evangelical Lutheran Church v. Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). Regarding a regulatory taking, this court has recognized the concept that restrictions contained in zoning ordinances can result in a taking of coal.[5] *McClimans v.*

---

3. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502(e).

4. Our scope of review in eminent domain cases is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Speicher Condemnation Appeal*, 58 Pa.Commonwealth Ct. 321, 428 A.2d 282 (1981).

5. For an in-depth analysis of the takings issue as applied to surface mining in Pennsylvania, see Luther G. Anderson, Comment, *A Fifth Amendment Taking Clause Analysis of Pennsylvania's Surface Mining Conservation and Reclamation Act*, 86 DICK.L.REV. 691 (1982).

*Board of Supervisors, Shenango Township,* 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987). The Federal Circuit has recently recognized that the Federal SMCRA can also effect a regulatory taking. *Whitney Benefits, Inc. v. United States,* 926 F.2d 1169 (Fed.Cir.1991).[6] However, as Landowners concede, if there exists by statute or regulation an administrative procedure by which the landowner could obtain viable economic use of his property, a takings challenge is not ripe until the administrative remedy has been exhausted. As Justice Blackmun explained:

> [A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.

*Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985).

To be able to claim a regulatory taking, Landowners bear the burden of showing that no administrative remedy exists or that none is applicable in this case. DER, on the other hand, need not show conclusively that a variance might be granted, but merely that a reasonable interpretation of the statutes and regulations admits to the possibility of an administrative remedy. *Barr v. Commonwealth, State Real Estate Commission,* 110 Pa.Commonwealth Ct. 530, 532 A.2d 1236 (1987).

Landowners contend that there is no available remedy under Section 4.2(c) of the Pa.SMCRA, 52 P.S. § 1396.4b(c), which would allow them to surface mine their coal. They contend no such remedy is available because of the amendment of Pa.SMCRA by the addition of Section 4.5(h)(5), 52 P.S. § 1396.4e, which appears to prohibit the mining of coal in public parks unless a valid right to do so existed as of

---

6. In *Whitney Benefits,* there was no suggestion that a variance procedure might apply. Rather, the government admitted that under the conditions describing the property, the statute specifically provided that "no permit shall be approved." *Id.* at 1171.

August 3, 1977.  They contend that the only way to give effect to both of these provisions is to interpret them together to mean that the only special circumstance now justifying the grant of a variance under Section 4.2(c) is limited to a determination of whether a preexisting right to mine exists as of August 3, 1977.  Because DER admits that no such rights exists, Landowners contend it would be futile for them to make application to the DER to seek a variance under Section 4.2(c) because DER is not permitted by Section 4.5(h)(5) either through the application process or through regulations to permit otherwise.  To construe these provisions differently, they argue, would also result in the Act being interpreted at odds with the Federal SMCRA prohibiting such mining and with which Pennsylvania mining laws are required to be at least as strict.

Landowners' interpretation of the relationship between Sections 4.2(c) and 4.5e(h)(5) of the Pa.SMCRA, 52 P.S. §§ 1396.4b(c), 1396.4e, is erroneous.  When Section 4.5 supplemented Pa.SMCRA in 1980, the General Assembly neither modified nor repealed Section 4.2(c), thus expressing an intention to preserve the Secretary's authority to grant variances allowing mining in state parks in "special circumstances."  Implementing that intention, DER, in 25 Pa.Code 86.102(4), has provided the "special circumstances" which warrant the issuance of a variance under Section 4.2.  That regulation provides, *inter alia:*

Subject to valid existing rights as they are defined in § 86.1 (relating to definitions), no surface mining operations except those which existed on August 3, 1977, are permitted:

\* \* \* \* \* \*

(4) On any lands within the Commonwealth park system:  provided, however, that surface mining operations may be permitted only if the Department finds that significant land and water conservation benefits will result when remining of previously minds lands is proposed.

Under this regulation, DER has the authority to issue permits within a state park if the proposed surface mining is remining of previously mined lands, and land and water conservation benefits will result from that operation. Because some of the land which is subject to Landowners' mining rights has already been affected by mining operations, Landowners must file the application for a variance to determine if a permit will be issued to mine some or all of their coal. This will determine if a de facto taking has occurred, and if it has, the extent of that taking.

■ While acknowledging that 25 Pa.Code § 86.102 might offer some administrative relief, Landowners contend that it is contrary to the express language of Section 4e(h)(5) of the Pa.SMCRA and is therefore invalid. *See Consulting Engineers Council of Pennsylvania v. State Architects Licensure Board*, 522 Pa. 204, 560 A.2d 1375 (1989). We have held, however, that the interpretation of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such interpretation is erroneous. *Spicer v. Department of Public Welfare*, 58 Pa.Commonwealth Ct. 558, 428 A.2d 1008 (1981).

Section 1 of Pa.SMCRA, 52 P.S. § 1396.1, provides that the purpose of the Act is to provide for:

[T]he conservation and improvement of areas of land affected in the surface mining of bituminous and anthracite coal and metallic and nonmetallic minerals, to aid thereby in the protection of birds and wild life, to enhance the value of such land for taxation, to decrease soil erosion, to aid in the prevention of the pollution of rivers and streams, to protect and maintain water supply, to protect land and to enhance land use management and planning, to prevent and eliminate hazards to health and safety, *to promote and provide incentives for the remining of previously affected areas,* to prevent combustion of unmined coal, and generally, to improve the use and enjoyment of said lands, to designate lands unsuita-

ble for mining and to maintain primary jurisdiction over surface coal mining in Pennsylvania.... (Emphasis added.)

The regulation providing for surface mining of previously mined land in state parks furthers several of the stated purposes of Pa.SMCRA.

The regulations, including § 86.102, were part of the state plan approved by the Secretary of the Interior,[7] whose approval allowed Pennsylvania to retain primary jurisdiction over surface coal mining. Absent a clear contravention of express statutory language or legislative intent, which we do not find in this case, we will not strike down a regulation, especially where the validity of the regulation has yet to be directly challenged.

Finally, Landowners urge that in the event this court finds that an administrative remedy may exist pursuant to 25 Pa.Code § 86.102, we should remand to the trial court for an evidentiary hearing on whether significant land and water conservation benefits would result from mining previously mined lands on the tract at issue. This determination, however, is not in the province of a trial court in an eminent domain proceeding, but rather is vested in DER by the express language of § 86.102.

Accordingly, having determined that Landowners' Petition for Appointment of Viewers is not ripe due to failure to exhaust administrative remedies, the order of the trial court is affirmed.

## ORDER

AND NOW, this 31st day of January, 1992, the order of the Court of Common Pleas of Butler County dismissing Peggy Ann Gardner's, Mary Jane Eckert's and Barbara Judge's Petition for Appointment of Viewers is affirmed.

---

7. Pennsylvania's revised state program was approved, effective July 31, 1982. 30 C.F.R. § 938.10. For a more detailed discussion of the approval process, *See Big "B" Mining Company v. Department of Environmental Resources,* 142 Pa.Commonwealth Ct. 215, 597 A.2d 202 (1991).