Estate of John W. **MERRIAM**, Mrs. Elizabeth C.L. **Merriam**, Executrix, Appellant,

v.

## PHILADELPHIA HISTORICAL COMMISSION.

Commonwealth Court of Pennsylvania.

Argued March 7, 2001.

Decided May 29, 2001.

Reargument Denied Aug. 10, 2001.

Richard A. Sprague, Philadelphia, for appellant.

Jane L. Istvan, Philadelphia, for appellee.

Murray S. Levin, Philadelphia, for amicus curiae.

Before McGINLEY, Judge, FLAHERTY and LEDERER, Senior Judges.

McGINLEY, Judge.

The Estate of John W. Merriam, Mrs. Elizabeth C.L. Merriam, Executrix (Estate) appeals from the order of the Court of Common Pleas of Philadelphia County (common pleas court) quashing as premature the Estate's appeal from the designation by the Philadelphia Historical Commission (**Commission**) **of the glass mosaic "Dream Garden"** (Dream Garden) as an historic object.

At issue is whether the appeal procedure set forth in the Philadelphia Home Rule Charter (Charter), § 5-1005, requires an appeal first be taken to the Board of License and Inspection Review (Board) [1] when the designation of an object as historic is questioned.

Also, at issue is whether the Commission's designation of the Dream Garden as an historic object is a final adjudication and thus appealable under Local Agency Law.[2]

On July 29, 1998, the Commission notified the Estate that it intended to consider designating Dream Garden as an historic object under the City of Philadelphia's historic preservation ordinance.[3]

1. The espoused purpose of the Board is to afford "citizens adversely affected by the exercise of licensing and inspection powers vested in City agencies, an orderly procedure, in conformity with due process, for the review of action taken against them." Annotation, Charter § 5-1005; Reproduced Record (R.R.) at 400a.

2. 2 Pa.C.S. §§ 751-754.

3. Section 14-2007(2)(1) defines an object as "a material thing of functional, aesthetic, cultural, historic or scientific value that may be, by nature or design, movable yet related to a specific setting or environment." The Philadelphia Code (Code) § 14-2007(2)(*l*); R.R. at 133a. The Code empowers and requires the Commission to designate historic buildings, structures, sites, objects and districts that meet the Code's criteria and are significant to the City. Code § 14-2007(4)(a) (c); R.R. at 134a-135a. The Code provides for notice to owners whose properties are being considered and permits any interested party to present testimony regarding the designation. Code, § 14-2007(6)(a)-(c); R.R. at 136a-137a. The notice invokes the Commission's jurisdiction over the properties being considered for designation and states that owners subject to

The notification described the Dream Garden as "[d]esigned specifically for the Curtis Publishing Company Building at 6th and Walnut Streets, this work of art is uniquely suited for its location and has come to be known as a defining piece of Philadelphia to locals and visitors." Nomination Form, Philadelphia Register of Historic Places at 12; R.R. at 222a.

The Dream Garden is an epic glass mosaic, executed by Tiffany Studios in New York, based upon a painting by Philadelphia native Maxfield Parrish. It consists of twenty-four panels, measures fifteen feet high and forty-nine feet wide and weighs over four tons. The panels are set in frames of white marble. The Dream Garden was moved from the New York studio and installed on a wall in the lobby of the Curtis Building, where it has remained since 1916. The Curtis Building is the original home of the Curtis Publishing Company which published the Ladies Home Journal and the Saturday Evening Post.

In 1968, John W. Merriam (Merriam) bought the Curtis Building and most of the furnishings and contents including the Dream Garden from the Curtis Publishing Company. Merriam sold the building in 1984, but retained all ownership rights to the Dream Garden. The new owners of the Curtis Building imposed no obligation on Merriam to retain the Dream Garden in the lobby of the Curtis Building.

Merriam died in 1994, leaving a sizeable estate of which the University of Pennsylvania, the University of the Arts, the Pennsylvania Academy of Fine Arts and Bryn Mawr College are the beneficiaries of fifty-nine percent. One of the estate's remaining assets is the Dream Garden. In April 1998, the Estate negotiated the sale of the Dream Garden to an anonymous buyer for nine million dollars, executed a memorandum of intent and received an escrow deposit of nine hundred thousand dollars.

On July 22, 1998, a Philadelphia newspaper reported the sale of the Curtis Building mosaic and ran several articles regarding the proposed sale. On July 29, 1998, by letter, the Commission served the Estate with a notice of intent to consider the Dream Garden for entry on the Philadelphia Register of Historic Places as an historic object.

As a result of this notice of intent to designate, the Estate could not remove the Dream Garden from the Curtis Building lobby. The letter stated:

Designation also entails some restrictions. To ensure authenticity and compatibility, the Commission reviews all proposed alterations to historic resources. The Commission also has jurisdiction over the issuance of demolition permits by the Department of Licenses and Inspections for historic resources; under the Code, the definition of demolition includes the removal of an object from its site. Pursuant to Section 14-2007(7)(*l*) of the Philadelphia Code, the Commission exercises this jurisdiction over any resource being considered by the Commission for designation as historic. The period of consideration has now begun with respect to Dream Garden. You are hereby notified that no one may remove or demolish Dream Garden, the Parrish/Tiffany mural, which is the object under consideration, without first seeking a demolition permit from the Department of Licenses and Inspections, pursuant to Philadelphia Code Sections 14-2007(2)(f), 7(a) and 7(*l*). No

the Commission's jurisdiction may not remove, demolish or alter the property without applying for a permit from the Department of

Licenses and Inspections which refers any permit applications to the Commission for its review. Code, § 14-2007(7)(c); R.R. at 138a.

one may otherwise alter the appearance of the same mural without applying for a construction permit ... The Department will refer any permit application which relates to this object to the Historical Commission for its review. This restriction is in effect now.

Letter, July 29, 1998, at 3; R.R. at 320a.

On July 30, 1998, the buyer, acting through an agent, declined to exercise the option to acquire the mosaic under the memorandum of intent, and stated, "the recent developments concerning the landmark status for the Mosaic by the City of Philadelphia has made the purchase thereof imprudent at the present time." Letter, July 30, 1998; R.R. at 322a-323a.

On November 20, 1998, after two continuances, the Designation Committee proceeded to hearing. Over the Estate's objections, the Commission voted to recommend that the Dream Garden be designated as an historic object on November 30, 1998, and issued its decision on December 28, 1998.

The Commission noted in designating Dream Garden:

[T] he Committee and others have received a nomination of Dream Garden to the Philadelphia Register of Historic Places as an object. And as Dick [Richard Tyler, Historic Preservation Officer] just defined object according to our ordinance, Dream Garden mosaic may be a movable object, designed specifically for the Curtis Building lobby and is significant for its cultural and aesthetic merits. Dream Garden meets four criteria enumerated in the historic preservation ordinance, section 14-2007, subsection 5 A, B, E and H to qualify as an historic object. One, Dream Garden possesses significant character, interest, and value as a part of the development, heritage and cultural characteristics of the City and it is associated with the life of a

person or persons in the past; Cyrus H. Curtis, the publisher of the Saturday Evening Post and Ladies Home Journal; Edward Bok, the editor of Ladies Home Journal; Maxfield Parrish and Louis Comfort Tiffany are associated with the creation, placement and execution of this object.

... [L]astly, owing to its unique location or singular physical characteristics, Dream Garden represents an established and familiar visual feature of the neighborhood, community and City. The Curtis Building is open to the public during business hours and in the evening, when the building is locked, visitors can see the mosaic through the glass doors at the 6th street entrance. Philadelphians and tourists frequent the Curtis Building to see this object. Extensive press coverage, numerous letters and a petition have been sent to this office expressing support for keeping Dream Garden in the lobby of the Curtis Building.

Hearing, Philadelphia Historic Designation Committee, November 20, 1998, (N.T. 11/20/98) at 4-7; R.R. at 14a-17a.

On January 22, 1999, the Estate filed a notice of appeal in common pleas court pursuant to Local Agency Law seeking review of the Commission's designation. On December 20, 1999, the common pleas court quashed the appeal and on August 1, 2000, the common pleas court issued its opinion. The common pleas court concluded:

The Philadelphia Home Rule Charter § 5-1005 states the following: 'The Board of License and Inspection shall provide an appeal procedure whereby any person aggrieved by the issuance, transfer, renewal, refusal, suspension, revocation or cancellation of any City license or by any notice, order or other action as a

result of any City inspection, affecting him directly, shall upon request be furnished with a written statement of the reasons for the action taken and afforded a hearing thereon by the Board of License and Inspection Review.' ... This provision provides a forum for the appellant to assert its rights.

... Pennsylvania case law clearly holds that where an appellant has not exhausted its administrative remedies an appeal to the courts is not proper ... Additionally, the Commonwealth Court has held that the requirement to exhaust administrative remedies applies to historic designations specifically. In *Miller & Son Paving*, 156 Pa.Cmwlth. 523, 628 A.2d 498 (1993), the Commonwealth Court quashed a Petition for Review which arose as a result of an administrative decision to designate a landmark as historic. The Court held that this designation was not a final adjudication and wrote that 'if there exists by statute or regulation an administrative procedure by which the landowner could obtain viable economic use of his property, a takings challenge is not ripe until the administrative remedy has been exhausted' (quoting *Gardner v. Commonwealth Dept. of Environmental Resources*, 145 Pa.Cmwlth. 345, 603 A.2d 279, 282 (1992)).

Common Pleas Court Opinion, August 1, 2000, at 1-3.

On appeal,[4] the Estate contends that the common pleas court's finding that the Estate had not exhausted its administrative remedies was in error. Initially, the Estate argues that there is no procedure under the Code or the Charter for an appeal to the Board or to any other entity for any administrative review of the designation of an object as historic.[5]

This Court agrees with the Estate that neither the Charter nor the Code sanctions the Board as the proper forum for an appeal from the designation of an object as historic.

**Procedure under Code and Charter**

The Charter provides for the creation of the Board, which functions as an "independent tribunal charged with providing an administrative appeal procedure, in conformity with due process, to citizens who are adversely affected by actions of the City agencies." *City of Philadelphia v. Philadelphia Board of License and Inspection Review*, 669 A.2d 460 (Pa.Cmwlth. 1995). Section 5-1005 of the Charter states:

The Board of License and Inspection Review shall provide an appeal procedure whereby any person aggrieved by the issuance, transfer, renewal, refusal, suspension, revocation or cancellation of any City license or by any notice, order or other action as a result of any City inspection, affecting him directly, shall upon request be furnished with a written statement of the reasons for the action taken and afforded a hearing thereon by the Board of License and Inspection Review. Upon such hearing the Board shall hear any evidence which the aggrieved party or the City may desire to offer, shall make findings and render a decision in writing. The Board may affirm, modify, reverse, vacate or revoke the

---

4. Our standard of review of the trial court's order is to determine whether the trial court abused its discretion or committed an error of law. *Gardner v. Commonwealth of Pennsylvania Department of Environmental Resources*, 658 A.2d 440, 444 (Pa.Cmwlth.1995).

5. Section 14-2007(10) of the Code provides "[a]ny person aggrieved by the issuance or denial of any permit reviewed by the Commission may appeal such action to the Board of License and Inspection Review ..."

action from which the appeal was taken to it.

Charter, § 5-1005 at 55; R.R. at 400a.

The Charter defines inspection as follows:

(b) Inspection shall mean any inspection, test or examination to which any person is subject as an applicant for or a holder of a license or to which any property is subject under any statute, ordinance or regulation which it is the duty of the Mayor or of any other officer or of any department, board, or commission to enforce.

Charter, § 5-1001 at 52; R.R. at 397a.

■ Reviewing the Charter, the only potential for the Board's appellate jurisdiction in this instance must be based on the phrase "any notice, order or other action as a result of any City inspection affecting him directly." *Id.* "Inspection" is defined in the annotation to § 5-1001 of the Charter. The definition states that it is intended to relate to inspections required to enforce the ordinances of the City necessary to protect the health and safety of the citizens.[6] However, the Code makes no provision for an inspection in connection with designation. Instead, the Code quite specifically mandates inspection by the Board after designation in connection with work carried out under a permit, but not before designation. Code, § 14-2007(8)(b); R.R. at 145a.

In sum, the Code does not provide any authority for an inspection in advance of historic designation. Therefore, no inspection is authorized in connection with historic designation and, consequently any appeal to the Board based on this provision lacks any foundation or support.

The Code does not contemplate the appeal of historic designation to the Board in the same manner as specifically delineated for the appeal of the issuance or denial of a permit to demolish. Instead the Code provides that a designation may be amended or rescinded "in the same manner as is specified for designation." Code, § 14-2007(5)(f); R.R. at 138a.

■ Also, the Code does not provide that a designation may be appealed. The Code details an appeal process, but that appeal process specifically relates to the denial of a permit, not to the appeal of a designation. The Code states: "[a]ny person aggrieved by the issuance or denial of any permit reviewed by the Commission may appeal such action to the Board of License and Inspection Review." Code, § 14-2007(8)(a); R.R. at 144(a).

It is well settled that an administrative agency can only exercise those powers, which have been granted to it by statute. "[A]n administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grants ..." *Commonwealth v. American Ice Co.*, 406 Pa. 322, 331, 178 A.2d 768, 773 (1962). "The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable." *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 310, 382 A.2d 731, 736 (1978).

■ In the absence of any appellate review procedure under the Code or the Charter, the Estate contends that Local Agency Law, 2 Pa.C.S. §§ 751-754 controls. The Pennsylvania Supreme Court's decision in *United Artists Theater Circuit, Inc. v. City of Philadelphia*, 528 Pa. 12, 595

---

6. "Inspection is defined in the broadest possible sense of the examination or testing of property or the conduct of activities subject to regulation by statute or ordinance or to licensing...." Annotation, Charter, § 5-1001.

A.2d 6 (1991)(*United Artists I*), *reversed* by 535 Pa. 370, 635 A.2d 612 (1993)(*United Artists II*) supports this contention. In *United Artists I,* the Pennsylvania Supreme Court noted:

> Sameric Corporation reacted to the notice of designation by filing a suit in equity and a petition for a preliminary injunction in the Court of Common Pleas of Philadelphia County. Sameric's suit, inter alia, sought a declaratory judgment that the Commission was without authority to designate its Boyd Theater Building as historic. The trial court properly treated the suit and petition as an appeal pursuant to the provisions of the Local Agency Law, 2 Pa. C.S. § 752 . . .

*United Artists I,* 528 Pa. at 16, 595 A.2d at 8.

In this instance, the Code confers no authority on the Commission to conduct an inspection in connection with historic designation or to appeal an historic designation. Therefore, this Court agrees with the Estate, and consistent with *United Artists I,* that based on the Charter and the Code an appeal to the Board of the designation of the Dream Garden as an historic object was not an option, and, Local Agency Law controls.

**Appeal under Local Agency Law**

Under Local Agency Law aggrieved parties may appeal an agency adjudication directly to common pleas court. Section 752 of the Local Agency Law provides that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals . . ." 2 Pa.C.S. § 752. "Adjudication" is defined as "any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities duties, liabilities or obligations of any or all

of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101.

In order to appeal under Local Agency Law the Commission's designation must be a final order affecting personal or property rights. The common pleas court held that because the Estate failed to exhaust its administrative remedies the designation of Dream Garden was not a final adjudication, and the matter was not ripe for adjudication. This Court respectfully disagrees.

■ The concepts of ripeness and exhaustion of administrative remedies are similar but distinct. In *Gardner v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 658 A.2d 440 (Pa.Cmwlth.1995) we addressed whether a property owner's claim seeking compensation for the alleged taking of coal rights under land taken for a state park was ripe for adjudication or whether the owner had to first exhaust administrative appeals by applying for a variance. We noted, "[r]ipeness and exhaustion are similar in that they both deal with timing of judicial review but they are distinct concepts. Ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies." Exhaustion is concerned with "agency autonomy." *Gardner,* 658 A.2d at 444.

■ First, we address exhaustion of administrative remedies. "The doctrine of exhaustion prohibits prospective parties of administrative agency actions from by passing that process and challenging the administrative action directly to the courts." *Id.*

As our Pennsylvania Supreme Court noted in *Machipongo Land and Coal Company of Pennsylvania v. Department of Environmental Resources,* 538 Pa. 361, 648 A.2d 767 (1994), litigants are not always compelled to exhaust administrative

remedies if there are no reasonable remedies available.

> Appellees rely upon *Gardner v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 145 Pa. Commw. 345, 603 A.2d 279 (1992), for the proposition that the mere existence of statutory and regulatory remedies compels Appellants to first avail themselves of those mechanisms before proceeding to a judicial forum. However, this is too broad a reading of Gardner. Rather in Gardner, the Commonwealth Court held only that the trial court properly ruled that there appeared to be a reasonable administrative remedy still available, and that therefore, the injured party must first exhaust those remedies before challenging the matter in court. Here, a specific finding was made by Commonwealth Court that there were *no* reasonable administrative remedies available; thus Gardner is inapplicable. (emphasis in orginal).

*Machipongo,* 538 Pa. at 365, 648 A.2d at 769.

██ Here, no reasonable administrative remedy is available because the Code simply does not provide any statutory appeal from the designation of an object as historic. In fact, the Commission has forced the Estate to first seek a permit to move the Dream Garden before providing judicial review of the decision to designate. This procedure is rife with futility at a time when the Estate has already lost a potential sale by virtue of the designation.[7] Therefore, we agree with the Estate that because no reasonable administrative remedy is available, the Estate did not fail to exhaust its administrative remedies to appeal the designation of the Dream Garden.

██ Also at issue is whether the Estate's appeal is premature and therefore not ripe for judicial review. The rationale of the ripeness doctrine "is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies. . . ." *Rouse & Associates Ship Road Land Limited Partnership v. Pennsylvania Environmental Quality Board* 164 Pa.Cmwlth. 326, 642 A.2d 642, 645 (1994). In *Rouse,* we addressed whether developer Rouse & Associates (Rouse) challenge of a change in the designation of water quality standards for a creek prior to seeking a permit to discharge into the creek was ripe for review.

> In determining whether the present matter is ripe for review, this Court will consider both whether the issues are adequately developed for judicial review and what hardship the parties will suffer if review is delayed. *Braksator v. Zoning Hearing Board of Northampton Township,* 163 Pa.Cmwlth. 332, 641 A.2d 44 (1994).

*Id.*

In *Rouse,* we found that Rouse would suffer actual and present harm before seeking a permit. First, it would be required to spend endless amounts of time and money to prepare plans for a new treatment plant when the Department of Environmental Resources (now Department of Environmental Protection) had already determined that a treatment plant with this discharge into this stream would cause an adverse change to the stream. Next, Rouse would have to wait for an administrative determination before ob-

---

**7.** We note that the Estate did seek a permit to remove Dream Garden from the lobby of the Curtis Building and was denied that permit. Moreover, The Commission's Committee on

Financial Hardship found that the Estate had failed to demonstrate that the denial of the permit resulted in a financial hardship to the Estate. Letter, October 25, 1999.

taining judicial review. *Rouse*, 642 A.2d at 645. Finally, Rouse could not proceed with the development or sell the development because of the uncertainty of the sewer proposal. *Id.*

In this instance, the Estate alleged it has suffered actual and present harm as a result of the Commission's designation. First, the proposed sale of the Dream Garden for nine million dollars collapsed due to the threat of historic designation. Currently, the Estate is prevented from moving or altering the work of art from its present location forestalling any chance of any future sale. Unlike the designation of a building or a structure, which can be adapted for other uses, the historical designation of Dream Garden precludes any right of private ownership of the work of art. The Estate has no viable economic use of its property, following designation. It remains a privately owned piece of art in a building owned by a third party. We conclude that this hardship to the Estate establishes this challenge to the Code is ripe for judicial review.

It is futile for the Estate to seek a permit from the Commission to alter or move Dream Garden. Dream Garden was designated as an historic object in large part because of its unique location in Curtis Building lobby. For the Estate to seek a permit to remove it from the Curtis Building lobby puts the Estate at odds with one of the primary characteristics the Commission used to define the Dream Garden as historic, its location.

While the Curtis Building is open to the public during business hours, and visitors may view the mosaic after hours through glass doors, and tourists seek out the mosaic, and many support keeping the Dream Garden in the Curtis Building, nothing prevents the owner or owners of the Curtis Building from a change in policy, such as restricting admission to tenants or covering the glass doors. It may well be determined that the Commission's designation is an unjustified reach to accommodate visitors and tourists at the urging of the media and at the expense of the lawful owner. The sooner the merits of the designation are reviewed, the better.

Moreover, the Estate not only challenges the designation of the Dream Garden, it seeks to test whether the Commission had the authority to designate the Dream Garden as an historic object. In *United Artists II*, the Pennsylvania Supreme Court found that the Commission had exceeded it authority under the preservation law when it designated the interior of the Boyd Theater as historic. By application of this prior finding, the Estate argues that the under the Code, the designation of the Dream Garden, an object located in the interior of a building, constituted an unconstitutional taking. As we stated in *Rouse*, the exhaustion of administrative remedies is not required where a statutory scheme's constitutionality or validity is challenged. *Rouse*, 642 A.2d at 647.

Because we find that it is futile and unrealistic to require the Estate to seek a permit and that the Estate has suffered actual harm, this Court must disagree with the common pleas court and concludes that the Commission's designation of an object as historic is appealable under Local Agency Law.[8]

---

8.  The Pennsylvania Supreme Court's previous approval of an appeal of an historic designation under Local Agency Law in *United Artists I*, buttresses our decision. This Court believes that the Supreme Court would have raised the jurisdictional issue had it disapproved of treating the suit under Local Agency Law. "... court has the duty to raise, sua sponte if necessary, the issue of its power to hear an action, and the parties may not confer jurisdiction over a cause of action or the subject matter of an action by consent or agreement."

Accordingly, we reverse the decision of the common pleas court and reinstate the Estate's appeal.

### ORDER

AND NOW, to wit, this 29th day of May, 2001, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed and the appeal is reinstated and the matter remanded to be treated as an appeal under local agency law.

*Pheasant Run Civic Organization v. Board of Commissioners,* 60 Pa.Cmwlth. 216, 430 A.2d 1231, 1233, n. 4 (1981).

