INDEPENDENT OIL AND GAS ASSO-
CIATION OF PENNSYLVANIA, Hess
Energy, Inc., TXU Energy Services
and the New Power Company, Enron
Energy Services, Inc., UGI Energy
Services, Inc., PG Energy Services,
Inc., Ashland, Inc., Mid American Nat-
ural Resources, Inc., Agway Energy
Services–PA, Inc., Energy East Solu-
tions, Inc., Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Office of Consumer
Advocate and Office of Small Busi-
ness Advocate, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2001.

Decided Jan. 7, 2002.

Daniel Clearfield, Harrisburg, for petitioner.

Lawrence F. Barth, Harrisburg, for respondent, PUC.

Christine Maloni Hoover, Harrisburg, for Office of Consumer Advocate, respondent.

Before KELLEY, Judge, FLAHERTY, Senior Judge, JIULIANTE, Senior Judge.

FLAHERTY, Senior Judge.

The Pennsylvania Public Utility Commission (Commission or PUC) and the Office of Consumer Advocate (OCA) have filed preliminary objections to the petition for review in the nature of a complaint for declaratory judgment and a writ of prohibition filed by several natural gas suppliers (collectively NGSs).[1] We overrule the preliminary objections.

On June 22, 2001, the Natural Gas Choice and Competition Act (Act), 66 Pa. C.S. §§ 2201–2212, was enacted. The Act permitted retail consumers in Pennsylva-

---

1. The natural gas suppliers in this matter are Independent Oil and Gas Association of Pennsylvania, Hess Energy, Inc., TXU Energy Services and the New Power Company, Enron Energy Services, Inc., UGI Energy Services, Inc., PG Energy Services, Inc., Ashland, Inc., Mid–American Natural Resources, Inc., Agway Energy Services–PA, Inc., Energy East Solutions, Inc. (Petitioner's attorney stated at oral argument that the Enron bankruptcy filing is not an issue here.)

nia to purchase gas supplied from independent natural gas suppliers while continuing to receive distribution services from local distribution companies. On August 9, 2001, the Commission determined that the NGSs were subject to a regulatory assessment for Fiscal Year 2001–2002, pursuant to Section 510.[2] On August 24, 2001, the NGSs petitioned this Court in the nature of a complaint for declaratory judgment to exercise its original jurisdiction and declare that the Commission does not have the statutory authority to assess the NGSs for regulatory expenses pursuant to Section 510 of the Public Utility Code, 66 Pa.C.S. § 510 (hereinafter Section 510). The NGSs's complaint also requests this Court to enter a writ of prohibition preventing the Commission from subjecting the NGSs to the Commission's assessment authority including requiring the NGSs to pay assessments for Fiscal Year 2001–2002 and to pursue inadequate statutory remedies.[3] The PUC and the OCA filed preliminary objections challenging the validity of the NGSs' action and seeking dismissal of the petition based on a lack of jurisdiction, insufficient specificity in the complaint and previously filed objections pending before the Commission.

■ As a precursor to our analysis, we note that the NGSs' underlying action, relief under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531—7541, is not available "with respect to any . . . . proceeding within the *exclusive jurisdiction* of a tribunal other than a court." *Id.* § 7541(c)(2) (emphasis added). Generally, when challenges are set forth which question the scope of a governmental body's action pursuant to statutory authority, then the Declaratory Judgments Act is properly invoked. *Ruszin v. Department of Labor and Industry, Bureau of Workers' Compensation,* 675 A.2d 366, 370–71 (Pa.Cmwlth.1996); *Blackwell v. State Ethics Commission,* 125 Pa. Cmwlth. 42, 556 A.2d 988, 991 (1989).

■ The first issue raised by the PUC and the OCA is whether this Court lacks subject matter jurisdiction because the Commission's action is not a final order since the NGSs have not exhausted their administrative remedies, as mandated by Section 510.[4] The doctrine of exhaustion of administrative remedies restrains this Court from interrupting the administrative process and we may not prematurely entertain an administrative appeal when an adequate statutory-prescribed remedy exists. *See Jordan v. Fayette County Board of Assessment Appeals,* 782 A.2d 642, 646 (Pa.Cmwlth.2001) (citing *Shenango Valley Osteopathic Hosp. v. Department of Health,* 499 Pa. 39, 451 A.2d 434 (1982)).

This Court has recently addressed the interplay between the Declaratory Judgments Act and the doctrine of exhaustion of administrative remedies in *Larry Pitt &*

---

**2.** The PUC, OCA and Office of the Small Business Advocate are funded through a system of assessments wherein those entities that are regulated by the PUC, *i.e.,* public utilities, must pay an annual share of the agency's operating expenses. The procedure for determining the amount of the assessment is found in Sections 510 and 511 of the Public Utility Code.

**3.** The NGSs also filed an application for special relief in the form of a preliminary injunction but have since withdrawn it.

**4.** Section 510(d) states, in relevant part, "Suits by public utilities.—No suit or proceeding shall be maintained in any court for the purpose of restraining or in anywise delaying the collection or payment of any assessment made."

Section 510(e) states, in relevant part, "The procedure in this section [Section 510] providing for the determination of the lawfulness of assessments and the recovery back [sic] of payments made pursuant to such assessment shall be exclusive of all other remedies and procedures."

*Associates, P.C. v. Butler*, 785 A.2d 1092 (Pa.Cmwlth.2001):[5]

> [I]t is appropriate to defer judicial review where the question presented is one within an *agency specialization* and where the *administrative remedy is likely to produce the desired result.* However, the doctrine that administrative remedies must be first exhausted is not so inflexible as to bar either legal or equitable jurisdiction where the available administrative remedy is *inadequate to alleviate the injuries sustained.*

*Id.* (citations omitted) (emphasis in the original) (quoting *National Solid Wastes Management Assoc. v. Casey*, 135 Pa. Cmwlth. 134, 580 A.2d 893, 897 (1990)). Accordingly, under the Declaratory Judgments Act and *Larry Pitt,* our analysis of the PUC and the OCA's preliminary objections must address whether Section 510 provides for an exclusive remedy, whether the remedy under Section 510 is adequate and whether this issue involves a question requiring agency specialization.

The General Assembly has crafted an unambiguous mandate for public utilities to appeal their assessments within the PUC and not directly to the courts. *See* 66 Pa.C.S. § 510(c), (d); *see also Pittsburgh Limousine, Inc. v. Pennsylvania Public Utility Commission*, 762 A.2d 1150, 1153 (Pa.Cmwlth.2000). Since this Court has "recognized that a statutory remedy is exclusive unless the jurisdiction of the courts is expressly preserved", *Blackwell,* 556 A.2d at 990 (citing *Myers v. Department of Revenue,* 55 Pa.Cmwlth. 509, 423 A.2d 1101 (1980)), we must examine whether the statutory remedy prescribed in Section 510 is applicable to the NGSs.

■ The authority of the Commission to assess and allocate regulatory expenses, as well as to require the exhaustion of administrative remedies, under Section 510 is clearly limited to *public utilities. See generally* 66 Pa.C.S. § 510. The question, then, is whether the NGSs are public utilities.[6] The Natural Gas Choice and Com-

**5.** In *Larry Pitt,* legal counsel had entered into contingency fee agreements with worker compensation claimants for 33 1/3% of the amount recovered under the Workers' Compensation Act (Act). The workers' compensation judges (WCJs), however, would not approve these fee agreements and denied the entire fee agreement or had the claimants amend the fee agreements to a 20% contingency. Counsel filed a petition for review in the nature of an action for declaratory judgment seeking this Court to exercise its original jurisdiction by challenging the constitutionality of Section 442 of the Act. Counsel sought to enjoin the WCJs from interfering with contingency fee agreements and to pay immediately the full amount of monies owed. This Court found that an adequate statutory remedy existed with the Workers' Compensation Appeals Board (Board) tribunal for legal counsel to raise the contingency fee agreement issue because the Board could grant the relief desired albeit on different bases than those asserted in the petition for review.

**6.** Section 102 of the Public Utility Code defines a "public utility" as:

(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
  (i) Producing, generating, transmitting, distributing or furnishing natural or artificial gas .... for the production of light, heat, or power to or for the public for compensation.
  ....
  (iv) Transporting or conveying natural or artificial gas, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or nitrogen, or other fluid substance, by pipeline or conduit, for the public for compensation.
  ....
(2) The term does not include:
  (i) Any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself.
  ....
  (iii) Any producer of natural gas not engaged in distributing such gas directly to the public for compensation.
  ....
66 Pa.C.S. § 102.

petition Act defines a "natural gas distribution company" as:

> A public utility or city natural gas distribution operation that provides natural gas distribution services and which may provide natural gas supply services and other services.
>
> . . . .

66 Pa.C.S. § 2202. A "natural gas supplier" is defined as:

> An entity other than a natural gas distribution company, but including natural gas distribution company marketing affiliates, which provides natural gas supply services to retail gas customers utilizing the jurisdictional facilities of a natural gas distribution company.
>
> . . . .
>
> The term excludes an entity to the extent that it provides free gas to endusers under the terms of an oil or gas lease. Notwithstanding any other provision of this title [Title 66, Public Utilities], *a natural gas supplier that is not a natural gas distribution company is not a public utility as defined in section 102 (relating to definitions) [66 Pa.C.S. § 102] to the extent that the natural gas supplier is utilizing the jurisdictional distribution facilities of a natural gas distribution company or is providing other services authorized by the commission.*

*Id.* (emphasis added). Clearly, the General Assembly has excluded natural gas suppliers from the definition of "public utility" when the NGSs use the distribution services of natural gas distribution companies. This exclusion is unambiguous and, as such, we must give force and effect to the plain meaning of the statute. *See Oberneder v. Link Computer Corp.,* 548 Pa. 201, 206, 696 A.2d 148, 150 (1997) (holding that when the words of a statute are free from ambiguity, its letter is not to be disregarded under the pretext of pursuing its spirit). Further:

> It is for the legislature, not the PUC or this court to determine what business activity comes within the purview of the PUC. Because the legislature has determined [which] businesses . . . . are not public utilities, . . . . we are constrained to determine that they are not subject to regulation by the PUC. If the legislature determines that such businesses should, in fact, be regulated by the PUC, it can always amend the Public Utility Code to that effect.

*Bethlehem Steel Corp. v. Pennsylvania Public Utility Commission,* 552 Pa. 134, 144, 713 A.2d 1110, 1115 (1998). We conclude that the NGSs are not a "public utility" under Section 510. Consequently, the NGSs are not mandated to comply with the administrative procedure therein, *i.e.,* Section 510 is not an exclusive remedy to non-public utilities.

■ As for whether an adequate administrative remedy exists, the PUC and the OCA assert that the NGSs could have appealed their assessments under Section 510(c), which states, in part, that:

> Within 15 days after the receipt of such [assessment] notice, the public utility against which such assessment has been made may file with the commission objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, erroneous, unlawful or invalid.

66 Pa.C.S. § 510(c). The objectors contend that the Commission has the statutory authority to determine whether it has the statutory authority to assess NGSs, *i.e., that an adequate administrative remedy exists. See Larry Pitt, supra.* We disagree. The procedure under Section 510(c) can result in only a finding of what a public utility may *owe* on its assessment following the hearing; the procedure is not

adequate to determine the status of whether a natural gas supplier is a public utility.[7]

The inadequate remedy in Section 510(c) is illustrated by Section 510(d). Under Section 510(d), a public utility may sue the Commission in an action at law to recover any amount of an assessment that has already been paid, *e.g.*, after a public utility objects to its assessment pursuant to Section 510(c) but does not prevail at the hearing. If the "claimant" is successful with this action at law, then the Commission shall provide a refund, as directed by the court. The OCA, however, observes that Section 510(d) refers to "claimants" when discussing refunds and this language was intended to include not only public utilities but also non-public utilities that may have been erroneously or unlawfully assessed. Hence, the OCA concludes, Section 510(d) also provides an adequate remedy at law.

First, to avail one's self of the remedy in Section 510(d), *i.e.*, sue the Commission in court for a refund, the party must first pay the assessment. This is obviously not the remedy sought by the NGSs nor can a "pay and appeal" remedy be considered the equivalent of not having to pay at all. Second, the OCA's suggestion that Section 510(d) supplies an adequate remedy implies that the remedy in Section 510(c), *i.e.*, post-assessment objection and hearing before payment, is not adequate. Third, if this Court were to consider the term "claimant" in Section 510(d) to include both public utilities and non-public utilities, then the absence of the term in Section 510(c) implies that the objection and hearing procedure is only available to public utilities. Fourth, and more importantly, even if the NGSs were required to submit to Section 510 to avoid assessments for Fiscal Year 2001–2002, there is no statutory authority in Section 510 to grant prospective relief to NGSs so that they would not be assessed in the future.

■ In *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company*, 514 Pa. 430, 525 A.2d 1195 (1987), the issue arose whether an insurer who has paid a claim, allegedly owed by the CAT Fund, is barred from bringing an original action for recovery unless it has first sought resolution of the claim through the CAT Fund itself. The Pennsylvania Supreme Court concluded that that Health Care Services Malpractice Act (Act) lacked any specific procedure whereby the insurer may be afforded a remedy; rather, the Act was directed toward resolving claims of injured patients against health care providers. The director of the CAT Fund argued that the statutorily conveyed power to "defend, litigate, settle, or compromise any claim by the Fund" required that the insurer present its claim to the CAT Fund before gaining access to the courts. The Supreme Court detected the flaw with this position in that there was no statutorily prescribed procedure which the insurer was mandated to follow. In finding that an inadequate remedy existed, the Court further stated:

> Under the doctrine of exhaustion, before a litigant can be denied access to the courts there must be a forum available in which he or she can participate. Nebulous claims of informal procedures or implied administrative powers are

---

7. Section 510(c) goes on to state:

After such hearing, the commission shall record upon its minutes its findings on the objections and shall transmit to the objector, by registered or certified mail, notice of the amount, if any, charged against it in accordance with such findings, which amount or any installment thereof then due, shall be paid by the objector within ten days after receipt of notice of the findings of the commission with respect to such objections. 66 Pa.C.S. § 510(c).

unavailing since it is clear that without a *concrete procedural remedy* the litigant could in no way achieve a resolution of his claim except by the grace of the party against whom he is proceeding. *Id.* at 437, 525 A.2d at 1198 (emphasis added). Similarly, Section 510 of the Public Utility Code provides only a statutorily prescribed procedure for *public utilities* to contest assessments and not a forum for non-public utilities to vindicate the General Assembly's clear and unambiguous exemption of the NGSs from the definition of a public utility, as set forth in Section 2202 of the Public Utility Code. "The rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only where the available administrative remedies are inadequate with respect to the alleged injury sustained and the relief requested." *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 10, 383 A.2d 791, 795–96 (1977). The administrative remedy under Section 510 is inadequate to provide the relief requested by the NGSs.

■ Finally, the issue of the Commission's statutory authority to assess NGSs is not one that requires the agency "to throw light on the issue through the exercise of its specialized fact-finding function or application of its administrative exper-

tise." *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 459 Pa. 268, 281, 328 A.2d 819, 825 (1974). The issue is simple: Section 510 applies to public utilities and Section 2202 states that natural gas suppliers are not public utilities. "Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." *Id.* at 279, 328 A.2d at 824.[8]

■ The PUC also preliminarily objects to the NGSs' petition for review in the nature of a complaint for declaratory judgment because the complaint does not provide sufficient specificity about the "immediate competitive and financial harm" that payment of their assessments may cause the NGSs. *See* Pa. R.C.P. 1028(a)(3) (grounds for preliminary objections include insufficient specificity in a pleading). The PUC asserts that it cannot provide a meaningful answer to the NGSs' allegation because the NGSs have not provided information about the effects of payment on each of the individual companies collectively referred to as the NGSs. Nor, the PUC contends, do the NGSs specify how they would be harmed competitively.

8. The OCA also contends that this matter is not ripe for judicial review. "The concepts of ripeness and exhaustion of administrative remedies are similar but distinct." *Merriam v. Philadelphia Historical Commission*, 777 A.2d 1212, 1219 (Pa.Cmwlth.2001). "Ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. Exhaustion is concerned with agency autonomy." *Id.* (internal quotations omitted) (citation omitted). Whether an issue is ripe depends on whether 1) the issue has been adequately developed for judicial review; and 2) what hardship the parties will suffer if review is delayed. *Id.* at 1220. As observed, *supra*, the issue does not require agency expertise or the development

of a factual record but rather the reading of an unambiguous statute. The issue has been adequately developed for this Court to consider the applicability of Section 2202 (excluding NGSs from the definition of "public utility") to Section 510 (assessment procedure for public utilities). Further, the cost of the administrative procedure and delay before obtaining judicial review has been previously recognized as sufficient to demonstrate the existence of actual and present harm. *See Rouse & Associates—Ship Road Land Limited Partnership v. Pennsylvania Environmental Quality Board*, 164 Pa.Cmwlth. 326, 642 A.2d 642, 646 (1994). This matter is, therefore, ripe for judicial review.

As for the actual extent of the financial harm to the NGSs as a result of the assessments, the PUC has the information because it is the one who assessed the NGSs. In fact, the PUC queries how an assessment rate of 0.187771035 percent of revenues could inflict financial harm. It is obvious that any assessment would result in some amount of harm and the PUC is actually in the better position to appreciate the extent of the harm.

As for the competitive harm, the PUC contends that the competitors of the NGSs have paid their assessments so payment of the assessments by the NGSs would seem to put all natural gas suppliers "on an even footing". The NGSs stated in their petition for review:

> While regulatory assessments paid by public utilities are recovered from utility ratepayers through cost-based rates, competitive conditions and signed contracts preclude any automatic pass through to NGS' customers of assessments paid by NGSs. Requiring NGSs to pay PUC assessments will cause them immediate competitive and financial harm. NGSs' profit margins, if any, and NGSs' revenue receipts will be directly, immediately and adversely impacted by NGSs' payments of PUC assessments. As a result, NGSs' payments of the assessments will stifle, substantially curtail or possibly eliminate their availability to compete in the natural gas market in Pennsylvania—contrary to the goals of the Gas Competition Act.

Petition for Review, pp. 10–11, ¶ 30. We conclude that the NGSs have pleaded with sufficient specificity. Any further specifics can be ascertained through discovery.

In addition, the PUC contends there are non-petitioner natural gas suppliers that are seeking hearings before the Commission and entertaining this instant petition before the Commonwealth Court would disrupt the administrative process of those companies. In the two paragraphs devoted to this objection which is devoid of legal analysis, the PUC has failed to indicate the grounds for this particular preliminary objection. *See* Pa. R.C.P. 1028(a) (setting forth permissible grounds for preliminary objections).[9]

For these reasons, the preliminary objections of the PUC and the OCA are overruled.

### ORDER

AND NOW, this 7th day of January, 2002, the preliminary objections of the Pennsylvania Public Utility Commission and Office of Consumer Advocate are overruled. Respondents are hereby ordered to file an Answer in this matter within twenty (20) days of the date of this Order.

---

**9.** This Court is essentially left to guess whether the PUC is attempting to argue that a prior action is pending, the NGSs has elected an administrative remedy or that the proceeding should be stayed.