IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UGI Utilities, Inc., : 
                Petitioner : 
 : No. 464 M.D. 2013
         v. : 
 : Argued: June 17, 2015
City of Lancaster, Charlotte : 
Katzenmoyer, Director of Public : 
Works, City Council for the City : 
of Lancaster and Pennsylvania : 
Public Utility Commission, : 
                Respondents : 


BEFORE: HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
JUDGE McCULLOUGH                      FILED: October 15, 2015


Presently before this Court is the application of UGI Utilities, Inc. (UGI) for partial summary relief seeking a declaration that several provisions of Administrative Ordinance No. 16-2013 (the Ordinance) enacted by the City of Lancaster (City) are invalid and preempted by the Public Utility Code (Code), 66 Pa.C.S. §§101-3316, and an order enjoining enforcement of these provisions.

## I. Facts and Procedural History

The underlying facts of this case are not in dispute. UGI is a Pennsylvania corporation and a regulated public utility providing natural gas and other utility services to residential and business customers throughout eastern and central Pennsylvania. UGI serves approximately 355,000 customers in a service territory encompassing portions of 16 Pennsylvania counties. Within the City and its immediately surrounding suburban area, UGI serves approximately 42,000 customers, including 18,000 customers in the City alone. In order to serve its customers, UGI has developed a network of underground natural gas distribution mains, service lines, and other facilities. UGI maintains approximately 54 lineal miles of underground distribution lines within the City's streets and other public rights-of-way.

On May 28, 2013, the City enacted Administrative Ordinance No. 2-2013 for the purpose of implementing a comprehensive program for management of the City's rights-of-way, including management of public utilities and public utility facilities within these rights-of-way. The City also adopted, on this same day, a resolution which set forth a fee schedule related to activities and uses in the public rights-of-way.[1] On September 17, 2013, UGI filed a petition for review in the nature of a complaint in this Court's original jurisdiction seeking declaratory and injunctive relief, naming the City, Charlotte Katzenmoyer, the City's Director of Public Works, City Counsel, and the PUC as defendants.[2]

---

[1] This fee schedule sets forth, *inter alia*, a five-year use permit fee, curb and sidewalk and street opening permit and inspection fees, street opening degradation fees, and an annual assessment per linear foot of underground facilities located in the City's rights-of-way.

[2] The City, Katzenmoyer, and City Council shall be referred to collectively as the City.

## II. December 17, 2013 Ordinance

On December 17, 2013, the City enacted the Ordinance at issue, which repealed the previously enacted Administrative Ordinance No. 2-2013[3] and implemented another program for management of the City's rights-of-way, again including management of public utilities and public utility facilities within these rights-of-way. The City relied on the powers granted to it under the Third Class City Code (TCCC)[4] and the Home Rule Charter and Optional Plans Law[5] in enacting the Ordinance.[6]

The Ordinance describes the City's rights-of-way as a "valuable resource and asset, not only for City purposes, but also for the benefit of third-party users, who rely upon the Rights-of-Way of the City for the installation and maintenance of various facilities owned and operated by such third-parties to their economic benefit . . . ." (Ordinance at 2.) The Ordinance stated that the management and maintenance of the public rights-of-way represented a "significant continuing operational and capitol cost" for the City, which, by extension, is passed on to City taxpayers, residents, and business owners. *Id.* The Ordinance also stated that it was necessary to recoup these maintenance and management costs from "the actual users of such facilities" in the City's rights-of-way. (Ordinance at 3.)

---

[3] The fee resolution remained in effect.

[4] Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§35101-39701.

[5] 53 Pa.C.S. §§2901-2984.

[6] However, the City is actually organized under the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§41101-41625.

Section 263B of the Ordinance addresses PUC-regulated utilities and purports to impose certain duties on public utilities and grant various powers to the City. For example, section 263B-2 requires each public utility to submit to the City's Department of Public Works two paper copies and one electronic copy of a map depicting and certifying the location of all existing facilities within the City's rights-of-way. (Ordinance at 6, 7.) Section 263B-3 authorizes the City to conduct inspections to ensure that utility facilities within the rights-of-way do not constitute a public safety hazard and remain in compliance with PUC standards. Additionally, section 263B-4(9) requires each public utility that has been issued a street opening permit by the City to submit an updated map or maps. Further, section 263B-5 permits the City to impose an annual maintenance fee "in connection with the ongoing use and occupancy of City Rights-of-Way.[7] (Ordinance at 8.)

---

[7] The relevant provisions of the Ordinance state, in full, as follows:

§263B-2 As-Built Maps

On or before March 1, 2014, each Public Utility shall submit to the Department [of Public Works of the City of Lancaster] two paper copies and one electronic copy of as-built map or maps and engineering specifications as set forth in the Policies and Procedures depicting and certifying the location of all its existing Facilities within the Right-of-Way. Such electronic and paper maps and engineering specifications shall be submitted in a format and include the information required by the City by [sic] in the Policies and Procedures. If the maps are not provided electronically in the required format, then the Utility shall reimburse the City for the cost of converting the paper maps into electronic form or the cost of converting electronic maps in another format into the required format. Such maps are, and shall remain, confidential documents and are exempt from public disclosure under Pennsylvania's Right to Know Law, 65 Pa.C.S. §708; the Public Utility Confidential Security Information Disclosure Protection Act, 35 P.S. §§2141.1-2141.3; and the Public Utility Commission Regulations relating to Confidential

**(Footnote continued on next page…)**

4

**(continued…)**

Security Information, 52 Pa. Code §102.1. After submission of the as-built maps required under this Section, each Public Utility having facilities in the City Rights-of-Way shall update such maps as required under this Ordinance.

§263B-3 Right to Inspect

The City may conduct inspections of the City Rights-of-Way in order to ensure that Utility Facilities located within such Rights-of-Way do not constitute a public safety hazard, and remain in compliance with the standards set forth by the [PUC]. Such inspections shall be limited to establishing whether such Facilities meet relevant [PUC] standards, and comply with such City construction standards as relate to the opening and closing of City streets, curbs, and sidewalks, as provided under 15 Pa.C.S. §1511(e). In the event that the City determines that any Facilities of a Utility are not in compliance with such standards, then the City may bring a complaint against such Utility before the [PUC], in accordance with established [PUC] procedures. The City may also elect, in its discretion, to notify the Utility of the existence of any non-compliant Facilities, in order to abate such violations without the need for the filing of a formal [PUC] complaint.

§263B-4 Construction in the Rights-of-Way

. . .

(9) *Facilities Maps*. Each Utility issued a Street Opening Permit shall submit to the City, not later than thirty (30) days after completion of the permitted construction (or any party thereof, if required by the City), two paper copies and one electronic copy of updated as-built map or maps and engineering specifications as set forth in the Policies and Procedures depicting and certifying the location of the new Facilities constructed or updated. Such documents shall be submitted in a format and include the information required by the City in its Policies and Procedures. If the maps are not provided electronically in the required format, then the Utility shall reimburse the City for the cost of converting paper maps into electronic form or the cost of converting electronic maps in another format into the required format. Such maps are exempt from public disclosure under

**(Footnote continued on next page…)**

### III. Amended Petition for Review

UGI thereafter filed an amended petition for review again seeking declaratory and injunctive relief. UGI argued that the Ordinance violated the policy of the Commonwealth for a uniform, state-wide regulation of public utilities and public utility facilities; was preempted by the Commission's exclusive authority over the location, construction and maintenance of all public utility facilities; violated UGI's statutory right under section 1511(e) of the Business Corporation Law of 1988,

---

**(continued…)**

Pennsylvania's Right to Know Law, 65 Pa.C.S. §708; the Public Utility Confidential Security Information Disclosure Protection Act, 35 P.S. §§2141.1-2141.3; and the Public Utility Commission Regulations relating to Confidential Security Information, 52 Pa. Code §102.1.

. . .

§263B-5 Right-of-Way Maintenance Fee

(1) *Compensation for Right-of-Way Use.* Occupancy of City Rights-of-Way by any Utility is subject to the City's right to fix annually a fair and reasonable compensation, which shall be directly related to the City's actual Right-of-Way maintenance costs.

(2) *Annual Right-of-Way Maintenance Fee.* Each Utility with Facilities in the City's Rights-of-Way shall pay an annual fee to compensate the City for its costs incurred in connection with the ongoing use and occupancy of City Rights-of-Way. The Annual Right-of-Way Maintenance Fee shall be determined by the City and authorized by resolution of City Council and shall be based on the City's actual [right-of-way] maintenance costs. The Annual Right-of-Way Maintenance fee shall be fixed on a per-linear foot bases for Underground Facilities and on a per linear foot basis for Aerial Facilities. . . .

(Ordinance at 6-8.)

6

15 Pa.C.S. §1511(e), to use public rights-of-way without charge;[8] and imposed excessive fees, charges, costs, and assessments that will have a material adverse impact on utility rates and services. UGI sought a declaration that the aforementioned provisions of the Ordinance were preempted by the Code and, hence, were invalid and unenforceable, and that the imposition of the new maintenance and sidewalk and street opening fees, as well as the cost of requiring it to submit maps and drawings, were excessive and unreasonable.

The City filed preliminary objections alleging that this Court lacked jurisdiction because the PUC was not an indispensable party to this action. The City further alleged a demurrer as to all counts stating that it acted entirely within its police powers in adopting the Ordinance and that UGI failed to plead how the specific Ordinance provisions interfere with the PUC's exclusive jurisdiction or are preempted by the Code. UGI filed a response denying these allegations. By order dated April 28, 2014, this Court overruled the City's preliminary objections and directed the City to file an answer to UGI's amended petition for review.

---

[8] Section 1511(e) states that:

> A public utility corporation shall have the right to enter upon and occupy streets, highways, waters and other public ways and places for one or more of the principal purposes specified in subsection (a) (related to general rule that public utilities have the power of eminent domain) and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes, including the placement, maintenance and removal of aerial, surface and subsurface public utility facilities thereon or therewith. Before entering upon any street, highway or other public way, the public utility corporation shall obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the governmental authority having responsibility for the maintenance thereof.

The City later filed an answer denying the material allegations of UGI's amended petition for review and reiterating in new matter its previous assertions that it acted entirely within its police powers in adopting the Ordinance and that UGI failed to demonstrate how the specific Ordinance provisions interfere with the PUC's exclusive jurisdiction or are preempted by the Code. The City also asserted that the PUC has no jurisdiction to regulate rights-of-way fees, including maintenance fees, and that such fees are a legitimate method of cost recovery. Both UGI and the PUC filed answers to this new matter, denying these assertions.

## IV. Application for Summary Relief

UGI thereafter filed its application for summary relief which is presently before this Court.[9] UGI alleges that no material facts are in dispute and that its right to relief is clear. UGI seeks a declaration that sections 263B-2, 263B-3, 263B-4(9), and 263B-5 of the Ordinance are invalid.

## V. Discussion
## A. Preemption

"Municipalities are creatures of the state and have no inherent powers of their own. Rather, they possess only such powers of government as are expressly

_____

[9] Pa.R.A.P. 1532(b) states that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Moreover, in ruling on a request for summary relief, this Court "views the evidence in the light most favorable to the non-moving party, and enters judgment only if there is no genuine issue as to any material fact and the right to relief is clear as a matter of law." *Hospital & Healthsystem Association of Pennsylvania v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013). "A fact is considered material if its resolution could affect the outcome of the case under the governing law." *Id.*

8

granted to them and as are necessary to carry the same into effect." *Huntley & Huntley, Inc. v. Borough Council of Oakmont*, 964 A.2d 855, 862 (Pa. 2009). Additionally, under the law of preemption, "even in areas over which municipalities have been granted power to act, the state may bar local governing bodies from legislating in a particular field." *Hoffman Mining Company v. Zoning Hearing Board of Adams Township*, 32 A.3d 587, 593 (Pa. 2011).

In *Hoffman Mining Company*, our Supreme Court noted that there are three generally recognized types of preemption:

> (1) express or explicit preemption, where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter; (2) conflict preemption, where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute; and (3) field preemption, where analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments.

*Id.* at 593-94 (citations omitted).

## B. Exclusive Authority of the PUC

The exclusive authority of the PUC has been extensively discussed in the companion case of *PPL Electric Utilities Corporation v. City of Lancaster*, ___ A.3d ___ (Pa. Cmwlth., No. 462 M.D. 2013, filed October 15, 2015), and need not be recited here.

## C. City of Lancaster Ordinance

We begin this section of the opinion by noting that the issues and the arguments advanced by the parties in this appeal relating to sections 263B-3 and

263B-5 of the Ordinance are substantially the same as those set forth and disposed of by this Court in the companion case of *PPL Electric Utilities Corporation*. In that case, we granted, in part, the application for summary relief filed by PPL Electric Utilities Corporation, concluding that section 263B-3 of the Ordinance is preempted by the Code, and, hence, is invalid. However, we denied the application for summary relief with respect to section 263B-5 of the Ordinance, concluding that this section was not preempted by the Code and noting that the issues regarding the reasonableness of the annual maintenance fee imposed under section 263B-5 of the City's Ordinance, and whether said fee is a tax, may require further factual development before this Court. We incorporate that opinion by reference and reach the same conclusions herein.

We now turn to sections 263B-2 and 263B-4(9) of the Ordinance, both of which, as discussed above, require a public utility to submit and/or update maps and engineering specifications depicting and certifying the location of all existing facilities within the City's rights-of-way. Section 1501 of the Code imposes certain obligations on all public utilities regarding the character of its service and facilities, including that all such "service and facilities shall be in conformity with the regulations and orders of the [PUC]." 66 Pa.C.S. §1501.[10]

---

[10] Section 1501 states, in full, as follows:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions

**(Footnote continued on next page…)**

10

The PUC has promulgated a specific regulation addressing the maps, plans, and records of a public utility. Section 59.37 of the PUC's regulations requires that:

> Each public utility shall keep complete maps, plans, and records of its entire distribution and other system showing the size, character, and location of each main, district regulator, street valve and drip, and each service connection, together with such other information as may be necessary. The maps, plans, and records required by the provisions of this section shall be kept up to date so that the utility may promptly and accurately furnish any information regarding its facilities, or copies of its maps, upon request by the Commission.

52 Pa. Code §59.37.

Sections 263B-2 and 263B-4(9) of the City's Ordinance impose additional requirements on public utilities, mandating that each public utility submit to the City two paper copies and one electronic copy of a "map or maps and engineering specifications" depicting and certifying the location of all its existing and/or updated facilities within the City's rights-of-way. These sections further require the public utility to reimburse the City the cost of converting paper maps into

---

**(continued…)**

> of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility. The commission shall have sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility.

electronic form or the cost of converting electronic maps from one format to another. In essence, these sections allow the City to become a regulator itself, which contradicts the intent of our General Assembly in enacting the Code, as set forth in the long-established case law more fully discussed in the companion case of *PPL Electric Utilities Corporation*. *See*, *e.g.*, *Duquesne Light Company v. Upper St. Clair Township*, 105 A.2d 287 (Pa. 1954) (regulation of utilities expressly committed to the PUC); *York Water Company v. York*, 95 A. 396, 397 (Pa. 1915) ("Under the guise of a police regulation cities cannot undertake to determine the reasonableness of rates charged by public service corporations, nor can they prescribe regulations relating to the facilities, service and business of such corporations."); *PECO Energy Company v. Township of Upper Dublin*, 922 A.2d 996, 1005 (Pa. Cmwlth. 2007) ("the legislature intended the Public Utility Code to preempt the field of public utility regulation"). Thus, we must conclude that sections 263B-2 and 263B-4(9) of the Ordinance are preempted by the Code, and, hence, are invalid.

### Conclusion

Summary relief is appropriate where there are no genuine issues of material fact and the right to relief is clear as a matter of law. Pa.R.A.P. 1532(b); *Hospital & Healthsystem Association of Pennsylvania*. A century of case law has firmly established that the General Assembly's intent in enacting the Code and its predecessor statute was to provide for the uniform, statewide regulation of public utilities and public utility facilities. Indeed, this Court has expressly held that "the legislature intended the Public Utility Code to preempt the field of public utility regulation." *Township of Upper Dublin*, 922 A.2d at 1005. For the reasons stated above, we conclude that sections 263B-2, 263B-3, and 263B-4(9) of the City's

12

Ordinance are preempted by the Code, and, hence, are invalid. However, we conclude that section 263B-5 of the City's Ordinance, by which the City imposes an annual right-of-way maintenance fee, is not a public utility regulation and, hence, is neither preempted by the Code nor invalid.

Because no genuine issues of material fact remain to be decided and UGI has, in part, established a clear right to relief as a matter of law, we grant UGI's application for summary relief and enter judgment in its favor with respect to sections 263B-2, 263B-3, and 263B-4(9) of the Ordinance. Further, the City is specifically enjoined from enforcing these sections. We deny UGI's application for summary relief as to section 263B-5 of the Ordinance. As noted above, the issues regarding the reasonableness of the annual maintenance fee imposed under section 263B-5 of the City's Ordinance, and whether said fee is a tax, may require further factual development before this Court.[11]

_____
PATRICIA A. McCULLOUGH, Judge

Judge McGinley dissents.
Judge Leadbetter joins in part but dissents to maintenance fees (Section 263B-5) and maps (Section 263B-2 and B-4(9)) only.

---

[11] Based upon this determination, we need not address UGI's alternative arguments relating to statutory construction and its right to occupy a right-of-way under section 1511(e) of the Business Corporation Law of 1988, 15 Pa.C.S. §1511(e).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UGI Utilities, Inc., : 
                 Petitioner : 
                 : No. 464 M.D. 2013
        v. :
                 :
City of Lancaster, Charlotte :
Katzenmoyer, Director of Public :
Works, City Council for the City :
of Lancaster and Pennsylvania :
Public Utility Commission, :
             Respondents :

## *__ORDER__*

AND NOW, this 15th day of October, 2015, the application for summary relief filed by UGI Utilities, Inc., is granted as to sections 263B-2, 263B-3, and 263B-4(9) of the December 17, 2013 Ordinance enacted by the City of Lancaster (City). We hereby declare sections 263B-2, 263B-3, and 263B-4(9) of the Ordinance to be preempted by the Public Utility Code, and enjoin the City from enforcing these sections. UGI's application for summary relief as to section 263B-5 of the Ordinance is denied. Section 263B-5 is not preempted by the Code.

                                      _____
                                      PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UGI Utilities, Inc.,                              :
                    Petitioner                    :
                                                  :
          v.                                      : No. 464 M.D. 2013
                                                  : Argued:  June 17, 2015
City of Lancaster, Charlotte                      :
Katzenmoyer, Director of Public                   :
Works, City Council for the City                  :
of Lancaster and Pennsylvania                     :
Public Utility Commission,                        :
                    Respondents                   :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HNORABLE BERNARD L. McGINLEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


DISSENTING OPINION BY
PRESIDENT JUDGE PELLEGRINI              FILED: October 15, 2015


          For the reasons set forth in *PPL Electric Utilities Corporation v. City of Lancaster and Pennsylvania Public Utility Commission*, (Pa. Cmwlth., No. 462 M.D. 2013, filed October 15, 2015), I respectfully dissent.


                              _____
                              DAN PELLEGRINI, President Judge


Judge McGinley joins in this dissenting opinion.