R. Bruce McNew,
          Petitioner

       v.

East Marlborough Township and
East Marlborough Township
Board of Supervisors,
          Respondents

: 
: 
: 
: 
: 
: 
: 
: 
: 
: No. 29 M.D. 2022
: Submitted: April 3, 2023

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                           FILED: April 26, 2023

Before this Court are East Marlborough Township's (Township) and East Marlborough Township Board of Supervisors' (Board) (collectively, Respondents) preliminary objections (Preliminary Objections) to R. Bruce McNew's (McNew) petition for review filed in this Court's original jurisdiction seeking to invalidate and/or enjoin the enforcement of Section 1821 of the East Marlborough Township Zoning Ordinance of 2019 (Ordinance),[1] relating to local forestry and timber harvesting (Petition). After review, this Court sustains the Preliminary Objections in part and overrules them in part.

## Background[2]

McNew owns approximately 20 acres of land located at 921 Wawaset Road, Kennett Square, in the Township in Chester County, Pennsylvania (Property).

---

[1] The Township significantly amended and/or added to Section 1821 of the Ordinance in 2019.

[2] The facts are as McNew alleged in the Petition.

*See* Petition ¶ 1. Forestry Services Corporation, Inc. (FSC) purchased the right to conduct timbering activities on the Property. *See* Petition ¶ 5. In accordance with the Pennsylvania Department of Environmental Protection's (DEP) Regulations, locally administered by the Chester County Conservation District (CCCD), FSC prepared an Erosion & Sedimentation Plan (E&S Plan) and, on September 18, 2020, submitted the E&S Plan to the Township with an application on McNew's behalf for a zoning permit to allow timbering at the Property (Application).[3] *See* Petition ¶ 6; *see also* Petition Ex. A.

By September 25, 2020 letter, the Township's Zoning Officer, Charles Shock (Zoning Officer), notified FSC, *inter alia*, that despite oversight and permitting by the CCCD and DEP, the Application must also comply with Section 1821.E of the Ordinance. *See* Petition ¶¶ 8-9; *see also* Petition Ex. B. The Zoning Officer warned FSC that, pursuant to Section 1821.D.2 of the Ordinance, FSC had to file the Application at least 45 days before commencing timber harvesting operations, and if the Application was complete and met the Ordinance's requirements, the Township had 30 days to issue a permit, so no timber harvesting could take place at the Property before November 6, 2020. *See* Petition ¶¶ 10-11.

By October 9, 2020 letter, the Zoning Officer denied the Application for the following reasons:

> 1. [Ordinance] Section 1821.D.1.[] [r]equires an applicant to provide [a] written agreement to comply with the regulations established in [] Ordinance Section 1821. No such agreement was provided by [FSC].
>
> 2. [Ordinance] Section 1821.E.1.[] [r]equires an applicant to submit a Timber Harvesting Plan, signed by a Professional Forester. [FSC] has not submitted a Timber Harvesting Plan signed by [FSC], [McNew,] or a

---

[3] McNew did not include the E&S Plan or the Application with the Petition.

2

Professional Forester. Additionally, [FSC's] narrative and mapping are vague.

3. [Ordinance] Section 1821.E.1.b.[] [r]equires that feature maps are to be drawn to scale. [FSC] submitted only website-based documents, which do not appear to be drawn to scale, nor detailed in nature.

4. [Ordinance] Section 1821.E.1.b.i., ii., iii., and iv.[] [r]equires an existing features map, drawn to scale, containing a complete legend of all symbols used on the map. [FSC] has not provided a suitable existing features map. Rather, the purported Soil Map, Site Map, and Topographic Map are website-based documents, marked up in unintelligible fashion. The provided maps do not provide clear descriptions, locations or details as to the proposed Timber Harvesting activities. Additionally, [] Ordinance Section 1821.E.1.b.iv[.] requires that the topographical survey of the site and immediate surrounding areas depicting topographic features be prepared by a registered surveyor or registered engineer, including a boundary line survey, among other unfulfilled express requirements.

5. [Ordinance] Section 1821.E, 1.c.[] [r]equires a logging plan for the proposed Timber Harvesting Operation, which is to include items listed in Subsections i., ii., iii., iv., v., and vi. [FSC] has not provided a[n Ordinance]-compliant logging plan.

6. [Ordinance] Section 1821.E.1.d.[] [a]llows an applicant to combine the requisite existing features plan with the requisite logging plan, provided all required information for each plan is clearly shown. [FSC] can address several Application deficiencies in utilizing this provision's allowance.

7. [Ordinance] Section 1821.E.2.[] [r]equires a Plan for Forest Regeneration. [FSC] has not submitted a Plan for Forest Regeneration. It is assumed, given the nature of the Application, that the Timber Harvesting is not proposed as a Conversion to Agricultural Activity, as otherwise described within [] Ordinance Section 1821 [(Forestry and Timber Harvesting)] and covered under [the erosion and sediment control provisions in DEP's Regulations, 25 Pa. Code §§ 102.1-102.51]. The failure to provide a Plan for

3

Forest Regeneration results in non-compliance with a multitude of [Ordinance] Section 1821 requirements, including, [Ordinance] Section 1821.E.2.a.i., ii., iii., iv., and v., as well as [Ordinance] Section 1821.E.2.b.i. and ii.

8. [Ordinance] Section 1821.F.[] [s]ets forth requirements applicable to all Timber Harvesting applicants. [FSC] has failed to comply with requirements of [Ordinance] Section 1821.F. Until additional information, documentation, and Plans are provided (as outlined above), the Township cannot adequately assess compliance with [Ordinance] Section 1821.F.

At this time, given the above-identified Application deficiencies, the Township cannot issue the requested timber harvesting zoning permit. Until required, supplemental information and documentation is provided to the Township for further review, the timber harvesting zoning permit request is hereby denied.

Petition Ex. C at 2-3; *see also* Petition ¶ 12.

McNew alleges that "[t]he Zoning Officer's denial, and the reasons stated therefor, advance a regulatory scheme by the Township which is intended to duplicate, impede and frustrate the existing comprehensive statewide regulations governing timber harvesting activities[,]" Petition ¶ 13, specifically, Section 603(f) of the Pennsylvania Municipalities Planning Code (MPC),[4] 53 P.S. § 10603(f) (which limits a municipality's authority to regulate forestry activities including timber harvesting); Sections 312 and 313 of Chapter 3 of the Agriculture Code commonly referred to as the Agriculture Communities and Rural Environment Act (ACRE),[5] 3 Pa.C.S. §§ 312, 313 (which prohibits a municipality from adopting and/or enforcing local zoning regulations prohibited or preempted by state law); and Sections 2 and 3 of what is known as the Right to Farm Act (RTFA),[6] 3 P.S. §§ 952,

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[5] 3 Pa.C.S. §§ 101-11108. ACRE was enacted and was immediately effective on July 6, 2005.

[6] Act of June 10, 1982, P.L. 454, *as amended*, 3 P.S. §§ 951-958.

4

953 (which precludes a municipality from regulating normal agricultural operations, including forestry and forestry products). *See* Petition ¶¶ 15-18, 32-38. Notwithstanding, McNew did not appeal from the Zoning Officer's denial, nor did he supplement the Application. *See* Prelim. Objs. ¶¶ 7-8; *see also* Answer to Prelim. Objs. ¶¶ 7-8.

On October 26, 2020, McNew's counsel submitted an ACRE review request to the Commonwealth of Pennsylvania Office of Attorney General (OAG) seeking a determination of whether the subject Ordinance provisions violated ACRE and constituted an unauthorized local ordinance and unlawfully restricted timber harvesting at the Property. *See* Petition ¶ 19; *see also* Petition Ex. D. On November 4, 2020, the OAG responded to McNew and the Township, recommending that the Township enact Pennsylvania State University School of Agriculture's September 2019 model ordinance entitled *Forest Management and Timber Harvesting in Pennsylvania* (PSU Model). *See* Petition ¶¶ 20-21; *see also* Petition Ex. E.

By January 11, 2021 letter, the Township responded to the OAG's recommendation, stating that it had amended its timber harvesting ordinance in 2019 based in large part on the Brandywine Conservancy's model timber harvesting ordinance (Brandywine Model); reviewed each of McNew's Ordinance challenges and declared them baseless; and concluded that amending the Ordinance to conform to PSU's Model was unwarranted. *See* Petition ¶ 23; *see also* Petition Ex. F.

On October 1, 2021, the OAG issued its comprehensive review of the Ordinance, *see* Petition ¶ 24, therein asserting that while the Brandywine Model was a good template, "it has flaws[,]" and the PSU Model "is the gold standard." Petition Ex. G at 1. The OAG offered to work with the parties to determine how McNew could proceed with timber harvesting at the Property and how the OAG could assist the Township in bringing the Ordinance into compliance with state law. *See* Petition Ex. G. The OAG further declared: (1) although the Township may require permits

5

and charge fees to secure them, the MPC prohibits the Township from assessing fees to cover the Township's engineering and technical consultant costs; (2) to the extent that the Ordinance's site map, logging plans, and E&S [Plan] best management practices (BMPs) requirements are not duplicative of the state-mandated E&S Plan, they are permissible; (3) because Pennsylvania's Forest Stewardship Program is a voluntary program, the Township cannot make a Forest Stewardship Plan a requirement for securing a timber harvesting permit; (4) although the Ordinance references *regeneration*, pursuant to the PSU Model, the Township should seek to achieve *reforestation*; (5) blanket steep slope forestry activity restrictions violate the MPC because it conflicts with BMPs in the field of forestry, and both an E&S Plan and timber harvesting plan would address steep slope harvesting; (6) blanket prohibitions on timber harvesting within floodways and wetlands or riparian buffer zones conflict with DEP's erosion and sediment control and waterway management regulatory schemes, which allow timber harvesting near water sources using BMPs that take a property's unique conditions into consideration; and (7) ordinances attempting to place uniform percentage standards on forestry activities are unreasonable where timber harvesting is a well-recognized forest management practice that can renew and improve a forest. *See* Petition ¶ 25; *see also* Petition Ex. G at 2-5. In addition, the OAG inquired of McNew and the Township:

> Can you let the OAG know three things: 1) what are your thoughts on the information [the OAG] provided . . . ; 2) would you like to use the OAG's "good offices" to see if there is a way to have the timber harvest proceed; and 3) is [the Township] willing to work with the OAG to produce a timber harvesting ordinance that complies with state law?

Petition Ex. G at 5. The OAG declared: "Regardless of whether the parties want to engage [in discussions for a short-term permitting solution], the OAG and [the

6

Township] will work together on the longer issue of making sure the [Ordinance] complies with state law." *Id*. at 2.

By November 15, 2021 letter, the Township notified the OAG that it was committed to working with McNew and the OAG, it retained Michael G. Jacobson, Ph.D., from PSU, to review the Ordinance's provisions, and it would offer a comprehensive response to the OAG, which it did on December 15, 2021.[7] *See* Petition ¶¶ 26-27; *see also* Petition Exs. H, I.

In its December 15, 2021 letter, the Township explained that, before FSC filed the Application, the Township had approved McNew's application to change his lot lines to accommodate residential development at the Property that would result in substantial elimination of existing woodlands to be replaced by driveways and building areas. *See* Petition Ex. I at 2 n.1. The Township declared its willingness to make certain changes to the Ordinance and to discuss how McNew may proceed; however, it took issue with certain of the OAG's interpretations, remained steadfast regarding its duty to preserve its natural resources, found McNew's complaints inextricably intertwined with the Application's significant deficiencies, and felt the Ordinance should be fully discussed and analyzed *before* the Township should have to disregard its timber harvesting requirements in McNew's favor. *See* Petition Ex. I. Despite the Township's stated willingness to do so, it has not revised any portions of Section 1821 of the Ordinance, nor adopted the PSU Model as the OAG recommended, and the Township continues to prohibit McNew from timbering at the Property. *See* Petition ¶¶ 29-31, 37-38; *see also* Answer to Prelim. Objs. ¶¶ 14-15.

On January 24, 2022, McNew filed the Petition in this Court, alleging therein that the Township continues to prohibit McNew from enjoying his timber

---

[7] McNew does not state in the Petition whether he responded to the OAG's queries.

harvesting rights in violation of ACRE, the Township has offered no legitimate explanation as to why it has disregarded the OAG's recommendation to adopt the PSU Model, and the Township's reliance on Section 1821 of the Ordinance to deny the Application is unreasonable, invalid, and/or preempted by state regulations as the OAG addressed. *See* Petition ¶¶ 29-38. McNew asks this Court to invalidate Section 1821 of the Ordinance and enjoin its enforcement, direct that McNew may proceed with timber harvesting on the Property consistent with the Application, and award McNew attorney's fees and costs pursuant to Section 317(1) of ACRE, 3 Pa.C.S. § 317(1). *See* Petition ¶ 39; *see also* Petition *Ad Damnum* Clause.

On March 4, 2022, Respondents filed the Preliminary Objections and their supporting brief, therein arguing that McNew failed to exercise or exhaust a statutory remedy (First Preliminary Objection); failed to state a valid legal claim under ACRE (Second Preliminary Objection) (demurrer); failed to state a valid legal claim for injunctive relief directing issuance of a timber harvesting permit (Third Preliminary Objection) (demurrer); and failed to state a valid legal claim because the matter is not ripe for disposition (Fourth Preliminary Objection) (demurrer). On April 4, 2022, McNew filed an answer opposing the Preliminary Objections and his brief in support thereof.

### Discussion

Initially, Pennsylvania Rule of Appellate Procedure 1516(b) authorizes the filing of preliminary objections to an original jurisdiction petition for review. *See* Pa.R.A.P. 1516(b).

> In ruling on preliminary objections, [this Court] must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts,

8

argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review] and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review].

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). Nonetheless, "[c]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review], but also any documents or exhibits attached to it." *Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (quoting *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)).

**First Preliminary Objection**

In their First Preliminary Objection, Respondents argue that McNew failed to exercise or exhaust a statutory remedy. Specifically, Respondents claim that McNew is attempting to circumvent the MPC's existing statutory appeal process and use ACRE's statutory challenge to secure permission to proceed with his timber harvesting plans that do not comply with the Ordinance provisions not subject to the OAG's ACRE review. Respondents assert, *inter alia*, that without a forest regeneration plan, "there is no assurance that [McNew] is engaging in silviculture[8] - rather than land clearing for development - and no showing that ACRE applies[,]" and such information would allow the Township to fulfill its obligation as trustee to

---

[8] "'Silviculture' is defined as 'a phase of forestry that deals with the establishment, development, reproduction, and care of forest trees.' Webster's Third New Int[']l Dictionary 2120 (2002)." *Tinicum Twp. v. Nowicki*, 99 A.3d 586, 590 n.8 (Pa. Cmwlth. 2014).

determine any impact on the public natural resources under article 1, section 27 of the Pennsylvania Constitution.[9]

Section 615 of the MPC directs that "[a]ll appeals from decisions of the zoning officer shall be taken in the manner set forth in [the MPC]."[10] 53 P.S. § 10615. Section 909.1(a) of the MPC[11] states, in relevant part:

> The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:
>
> (1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to [S]ections 609.1[12] and 916.1(a)(2) [of the MPC, 53 P.S. §§ 10609.1 (relating to curative amendments), 10916(a)(2) (relating to ordinance validity)].
>
> . . . .
>
> (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor . . . .

53 P.S. § 10909.1(a). Section 916.1(a) of the MPC[13] specifies:

---

[9] Article 1, section 27 of the Pennsylvania Constitution declares:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

[10] This Court acknowledges that Section 910.1 of the MPC, added by Section 87 of the Act of December 21, 1988, P.L. 1329, provides: "Nothing contained in [A]rticle [IX of the MPC] shall be construed to deny the appellant the right to proceed directly to court where appropriate, pursuant to the Pennsylvania Rules of Civil Procedure [] 1091[, Pa.R.Civ.P. 1091] (relating to action in mandamus)." 53 P.S. § 10910.1.

[11] Added by Section 87 of the Act of December 21, 1988, P.L. 1329.

[12] Added by Section 10 of the Act of June 1, 1972, P.L. 333.

[13] Added by Section 99 of the Act of December 21, 1988, P.L. 1329.

A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:

(1) to the zoning hearing board under [S]ection 909.1(a) [of the MPC]; or

(2) to the governing body under [S]ection 909.1(b)(4), [of the MPC] together with a request for a curative amendment under [S]ection 609.1 [of the MPC, 53 P.S. § 10609.1].

53 P.S. § 10916.1(a).

Section 1002-A of the MPC[14] further provides:

(a) All appeals from all land use decisions rendered pursuant to Article IX [of the MPC] shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after entry of the decision . . . .

(b) Challenges to the validity of a land use ordinance raising procedural questions . . . shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the ordinance is located in accordance with [Section 5571.1 of the Judicial Code,] 42 Pa.C.S. § 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.).

53 P.S. § 11002-A. Thus, the MPC specifies that appeals from zoning officer permit denials and ordinance validity challenges shall be filed with the zoning hearing board, and appeals from zoning hearing board decisions are to be filed in the common pleas court.

Moreover, "[i]t is well settled that when an adequate administrative remedy exists, this Court lacks jurisdiction to entertain a suit in either law or equity."[15] *Pa. Indep. Oil & Gas Ass'n v. Dep't of Env't Prot.*, 135 A.3d 1118, 1129

[14] Added by Section 101 of the Act of December 21, 1988, P.L. 1329.

[15] This Court has declared that, generally,

11

(Pa. Cmwlth. 2015) (quoting *Grand Cent. Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 554 A.2d 182, 184 (Pa. Cmwlth. 1989)).   Thus, "where an adequate administrative process is available, a party may not forgo that process in favor of seeking judicial relief." *Se. Pa. Transp. Auth. v. City of Phila.*, 101 A.3d 79, 90 (Pa. 2014).

> The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts.  The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area.  Thus, where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action.

*Propel Charter Sch. v. Dep't of Educ.*, 243 A.3d 322, 327 (Pa. Cmwlth. 2020) (quoting *Funk v. Dep't of Env't Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013) (citations omitted)).

---

> "the mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be 'adequate and complete.'"  *Feingold* [*v. Bell of Pa.*], 383 A.2d [791,] 794 [(Pa. 1977)] ([quoting] *Phila*[.] *Life Ins*[.] *Co. v. Commonwealth*, . . . 190 A.2d 111, 116 ([Pa.] 1963)).   "[A]n administrative remedy is inadequate if it either: (1) does not allow for adjudication of the issues raised . . . or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy." [*Commonwealth ex rel.*] *Nicholas* [*v. Pa. Lab. Rels. Bd.*], 681 A.2d [157,] 161 [(Pa. 1996)].  A party claiming this exception must make a "clear showing that the remedy is inadequate." *Commonwealth v. Eisenberg*, . . . 454 A.2d 513, 515 ([Pa.] 1982).

*Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 517 (Pa. Cmwlth. 2018).

"However, the exhaustion doctrine is neither inflexible nor absolute. There are narrow circumstances where exhaustion of remedies is not required." *Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 513 (Pa. Cmwlth. 2018) (citation omitted).  In particular,

> "the exhaustion of administrative remedies is not required where a statutory scheme's constitutionality or validity is being challenged." *Giffin v. Chronister*, . . . 616 A.2d 1070, 1073 ([Pa. Cmwlth.] 1992).  Furthermore, such exhaustion is not a necessary prerequisite for obtaining judicial review if "[the challenged administrative] regulation itself causes actual, present harm" prior to its enforcement. *Concerned Citizens* [*of Chestnuthill Twp. v. Dep't of Env't Res.*], 632 A.2d [1,] 3 [(Pa. Cmwlth. 1993)].

*Pocono Manor Invs., LP v. Dep't of Env't Prot.*, 212 A.3d 112, 116 (Pa. Cmwlth. 2019).  Here, McNew "is challenging the validity and enforceability of Section 1821 [of the Ordinance] . . ." under ACRE.  McNew Br. at 7.

> ACRE
>
> governs local regulation of normal agricultural operations so that such operations are consistent with state policies and statutes.  To that end, [S]ection 313 of ACRE, in relevant part, provides:
>
> > (a) Adoption and enforcement of unauthorized local ordinances.--A local government unit shall not adopt nor enforce an unauthorized local ordinance.
> >
> > (b) Existing local ordinances.--[ACRE] shall apply to the enforcement of local ordinances existing on the effective date of this section and to the enactment or enforcement of local ordinances enacted on or after the effective date of this section.
>
> 3 Pa.C.S. § 313.

*Off. of Att'y Gen. ex rel. Corbett v. Richmond Twp.*, 917 A.2d 397, 399 (Pa. Cmwlth. 2007). Section 312 of ACRE defines *unauthorized local ordinance* as

> [a]n ordinance enacted or enforced by a local government unit which does any of the following:
>
> (1) Prohibits or limits a normal agricultural operation unless the local government unit:
>
> > (i) has expressed or implied authority under [s]tate law to adopt the ordinance; and
> >
> > (ii) is not prohibited or preempted under [s]tate law from adopting the ordinance.
>
> (2) Restricts or limits the ownership structure of a normal agricultural operation.

3 Pa.C.S. § 312. Section 312 of ACRE adopts the following definition of *normal agricultural operation* from Section 2 of the RTFA:

> The activities, practices, equipment and procedures that farmers adopt, use or engage . . . in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities and is:
>
> > (1) not less than [10] contiguous acres in area; or
> >
> > (2) less than [10] contiguous acres in area but has an anticipated yearly gross income of at least $10,000[.00].
>
> The term includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry. . . .

3 P.S. § 952; *see also* 3 Pa.C.S. § 312.

Pursuant to Section 314(a) of ACRE, "[a]n owner or operator of a normal agricultural operation may request the [OAG] to review a local ordinance believed to be an unauthorized local ordinance and to consider whether to bring legal

14

action under [S]ection 315(a) [of ACRE] (relating to right of action)." 3 Pa.C.S. §

314(a). Section 315 of ACRE also specifies:

> **(a) Attorney General action.--**The [OAG] may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance.[16]
>
> **(b) Other party action.--**Notwithstanding any provision of [Chapter 85, Subchapter C of the Judicial Code,] 42 Pa.C.S. [§§ 8541-8564] (relating to actions against local parties), any person who is aggrieved by the enactment or enforcement of an unauthorized local ordinance may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance.

3 Pa.C.S. § 315.

Although Pennsylvania courts have analyzed OAG original jurisdiction ACRE actions, the issue of whether a landowner must first exhaust a municipality's review process under the MPC before filing an original jurisdiction ACRE action appears to be one of first impression. However, "[m]unicipalities are creatures of the state and have no inherent powers of their own. Rather, they possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect." *UGI Utils., Inc. v. City of Lancaster*, 125 A.3d 858, 863 (Pa. Cmwlth. 2015) (quoting *Huntley & Huntley, Inc. v. Borough Council of Oakmont*, 964 A.2d 855, 862 (Pa. 2009)). The General Assembly generally authorized "[t]he governing body of each municipality, in accordance with the conditions and

---

[16] The OAG "has the discretion whether to bring an action under [S]ection 315 [of ACRE (right of action),]" Section 314(b) of ACRE, 3 Pa.C.S. § 314(b), and shall notify the requester of its decision "[w]ithin 120 days after receiving a request . . . ." Section 314(c) of ACRE, 3 Pa.C.S. § 314(c). The Petition does not reflect that McNew received notice from the OAG within 120 days of his October 26, 2020 request that the OAG intended to file an ACRE violation claim against the Township.

15

procedures set forth in [the MPC], [to] enact, amend[,] and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of [the MPC]."[17] Section 601 of the MPC, 53 P.S. § 10601. Subsequently, the General Assembly enacted ACRE, which specifically and further limited that authority in instances involving regulation of normal agricultural operations.[18] *See* 3 Pa.C.S. §

---

[17] Section 105 of the MPC declares, in relevant part:

> It is the intent, purpose and scope of [the MPC] . . . to promote the preservation of this Commonwealth's natural . . . resources and prime agricultural land; . . . to ensure that municipalities enact zoning ordinances that facilitate the present and future economic viability of existing agricultural operations in this Commonwealth and do not prevent or impede the owner or operator's need to change or expand their operations in the future in order to remain viable; . . . and to permit municipalities to minimize such problems as may presently exist or which may be foreseen and wherever the provisions of [the MPC] promote, encourage, require or authorize governing bodies to protect, preserve or conserve open land, consisting of natural resources, forests and woodlands, any actions taken to protect, preserve or conserve such land shall not be for the purposes of precluding access for forestry.

53 P.S. § 10105. Section 603(f) of the MPC adds:

> Zoning ordinances may not unreasonably restrict forestry activities. To encourage maintenance and management of forested or wooded open space and promote the conduct of forestry as a sound and economically viable use of forested land throughout this Commonwealth, forestry activities, including, but not limited to, timber harvesting, shall be a permitted use by right in all zoning districts in every municipality.

53 P.S. § 10603(f).

[18] "Although the Statutory Construction Act [of 1972 (SCA)], 1 Pa.C.S. §§ [1501-1991], is not expressly applicable to the construction of local ordinances, [Pennsylvania courts] apply the principles contained therein in interpreting local ordinances. Thus, the rules of statutory construction are applied to zoning ordinances with equal force and effect." *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 507 (Pa. 2021).

> The objective of statutory construction is to determine the legislature's intent. [*See* Section 1921(a) of the SCA,] 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General

16

313. This Court has ruled that ACRE is constitutional. *See Off. of Att'y Gen., ex rel. Kelly v. Packer Twp.*, 49 A.3d 495, 499 (Pa. Cmwlth. 2012) ("[T]he General Assembly acted constitutionally when it restricted municipalities from adopting 'unauthorized local ordinances' that interfere with normal agricultural operations" under ACRE.).

In addition, Section 761(a)(4) of the Judicial Code declares that the Commonwealth Court shall have original jurisdiction of all civil actions or proceedings "[o]riginal jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted." 42 Pa.C.S. § 761(a)(4). Section 315(b) of ACRE expressly authorizes a landowner, like McNew, to bring an action in the Commonwealth Court to invalidate Section 1821 of the Ordinance or enjoin its enforcement. ACRE does not require a landowner to first avail himself of the permit denial or ordinance validity challenge appeal process under the MPC before filing an action pursuant to Section 315(b) of ACRE. Moreover, the Pennsylvania Supreme Court has ruled that an "[OAG] action pursuant to ACRE does not conflict with the MPC, and the Commonwealth Court has subject matter jurisdiction over the challenge to the [o]rdinance pursuant to ACRE and the Judicial Code." *Off. of*

---

Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). Additionally, the language used by the legislature is the best indication of its intent. [*See* Section 1921(b) of the SCA,] 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). However, when the terms of a statute are not explicit, various factors may be considered in ascertaining legislative intent. [*See* Section 1921(c) of the SCA,] 1 Pa.C.S. § 1921(c).

*Metal Green Inc.*, 266 A.3d at 507. Section 1933 of the SCA provides that when there is a conflict between general and special provisions of a statute, "the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S. § 1933.

17

*Att'y Gen. ex rel. Corbett v. Locust Twp.*, 968 A.2d 1263, 1271 (Pa. 2009); *see also Packer Twp.*, 49 A.3d at 500 ("ACRE does not require [a landowner's normal agricultural operation] to be affected by [an o]rdinance in order for [the landowner] to make the request [for the OAG ACRE review]."); *Richmond Twp.*, 917 A.2d at 401 ("[T]he MPC and ACRE do not conflict.").[19]

Further, requiring McNew to *first* comply with the Ordinance to have the challenged provisions tested under the MPC, and *then later* having the OAG and this Court review the lawfulness of those provisions is illogical. This Court recognizes that the exhaustion doctrine's purpose is "to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area." *Propel Charter Sch.*, 243 A.3d at 327 (quoting *Funk*, 71 A.3d at 1101). However, our Supreme Court has explained that "[t]he more clearly it appears that the question raised goes directly to the validity of the statute[,] the less need exists for the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise." *Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Rev. of Allegheny Cnty.*, 328 A.2d 819, 825 (Pa. 1974). "Here the [] proceedings before the [zoning hearing b]oard would be of little, if any, utility in determining the [Ordinance's validity]. Whatever benefit might be derived from [McNew taking his challenges to the zoning hearing board] would be far outweighed by the inconvenience, delay[,] and expense involved." *Id.* In this instance, the Township acknowledged that since McNew's Ordinance challenges are inextricably intertwined with the Application's deficiencies, the Ordinance should be fully

---

[19] This Court acknowledges that *Locust Township*, *Packer Township*, and *Richmond Township* are distinguishable in that they involved review of *the OAG*'s role in ACRE challenges, but finds that those cases are nevertheless instructive here.

discussed and analyzed *before* the Township should have to disregard its timber harvesting requirements in McNew's favor. *See* Petition Ex. I at 2, 14.

Based on the foregoing, although McNew has not exhausted his administrative remedies at the Township's zoning hearing board and the common pleas court levels, he pled sufficient facts in the Petition to invoke the ordinance validity exception to the exhaustion requirement in the form of a challenge under Section 315(b) of ACRE. Accordingly, Respondents' First Preliminary Objection is overruled.

**Second Preliminary Objection**

In their Second Preliminary Objection, Respondents contend that McNew failed to state a valid legal claim under ACRE. In particular, Respondents argue that although McNew asserts that Section 1821 of the Ordinance is prohibited as unauthorized, invalid, unenforceable, and preempted by state law, the OAG's review reflects that some, but not all, of Section 1821 of the Ordinance was troublesome, so that the Ordinance was not *entirely* invalid. In addition, Respondents argue that McNew's failure to comply with the other Ordinance provisions that the OAG did not find troublesome precludes the Township from granting the Application.

McNew filed the Petition pursuant to ACRE for this Court to review whether Section 1821 of the Ordinance is prohibited or preempted by state law, including the RTFA and the MPC. Section 315(b) of ACRE does not explicitly require a landowner to first seek the OAG's review under Section 314(a) of ACRE before filing an original jurisdiction action. Moreover, Section 314(a) of ACRE reflects that "[a]n owner or operator . . . *may* request the [OAG] to review a local ordinance . . . ." 3 Pa.C.S. § 314(a) (emphasis added). Therefore, although McNew requested the OAG's review under Section 314(a) of ACRE and the OAG

19

responded, McNew was not statutorily prohibited from also filing the instant action. In addition, this Court has found nothing in ACRE that limits either the OAG or this Court to determining that Section 1821 of the Ordinance is *entirely* invalid, and Respondents do not cite to any authority to support such a claim.

Further, in the Petition, McNew alleged that "[t]he Zoning Officer's [d]enial[] and the reasons stated therefor[] advance a regulatory scheme by the Township which is intended to duplicate[], impede[,] and frustrate the existing comprehensive statewide regulations governing timber harvesting activities." Petition ¶ 13. In its October 1, 2021 review letter, the OAG explained, *inter alia*, that the Ordinance's timber harvesting documentation requirements duplicate, encroach on, and/or exceed what a landowner must supply in an E&S Plan to comply with state law. *See* Petition Ex. G at 2 ("A local municipality cannot duplicate a state regulatory scheme[,] nor can it 'impede a comprehensive, statewide scheme of regulation.' [] *Off*[.] *of Att*[*'y*] *Gen. ex rel. Corbett v. E. Brunswick Twp.*, 908 A.2d 720, 733 (Pa. Cmwlth. 2009)."). The Township disagreed. *See* Petition Ex. I at 6. Given that the crux of the Zoning Officer's permit denial and the Township's ongoing argument is McNew's failure to supply such documentation, that the Township disagrees with the OAG as to what the Township may prescribe, and that the Township has yet to meet with the OAG to discuss how to conform the Ordinance to state law, McNew's only options are to comply with an unauthorized Ordinance, or forego timber harvesting which he has a right to conduct on the Property. Under such circumstances, McNew has stated a valid legal claim under ACRE. Because "it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain [preliminary objections,]" *Torres*, 997 A.2d at 1245, Respondents' Second Preliminary Objection is overruled.

20

**Third Preliminary Objection**

In their Third Preliminary Objection, Respondents assert that McNew failed to state a valid legal claim for injunctive relief directing issuance of a permit to conduct timber harvesting at the Property. Specifically, Respondents argue that such request goes beyond ACRE's authority and scope, and McNew's failure to comply with other Ordinance provisions that the OAG did not find troublesome prevents the Township from issuing a permit.[20]

Section 315(b) of ACRE authorizes McNew's "action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or *enjoin the enforcement of the* [*Ordinance*]." 3 Pa.C.S. § 315(b) (emphasis added). It does not expressly authorize this Court to direct the Township to issue McNew a timber harvesting permit.[21] To the extent the challenged portions of Section 1821 of the Ordinance survive this Court's review, McNew will have to comply with them in order for the Township to assess his eligibility for a permit to

---

[20] Respondents also argue that McNew has not availed himself of the MPC's zoning review and appeal procedure which could have resulted in the Township issuing a permit with conditions. However, this Court has already addressed that issue and rejected Respondents' contention.

[21] Section 317 of ACRE does provide:

> In an action brought under [S]ection 315(b) [of ACRE] (relating to right of action), the court may do any of the following:
>
> (1) If the court determines that the local government unit enacted or enforced an unauthorized local ordinance with negligent disregard of the limitation of authority established under [s]tate law, it may order the local government unit to pay the plaintiff reasonable attorney['s] fees and other litigation costs incurred by the plaintiff in connection with the action.
>
> (2) If the court determines that the action brought by the plaintiff was frivolous or was brought without substantial justification in claiming that the local ordinance in question was unauthorized, it may order the plaintiff to pay the local government unit reasonable attorney['s] fees and other litigation costs incurred by the local government unit in defending the action.

3 Pa.C.S. § 317.

conduct timber harvesting at the Property. Accordingly, Respondents' Third Preliminary Objection is sustained.

**Fourth Preliminary Objection**

In their Fourth Preliminary Objection, Respondents argue that McNew failed to state a valid legal claim because the matter is not ripe for disposition. In particular, Respondents claim that "the process of [O]rdinance review by the OAG has not been completed."[22] Prelim. Objs. ¶ 25. Respondents further assert that McNew's allegations regarding his efforts to seek OAG review and his apparent failure to engage in discussion to resolve the parties' differences (as discussed in the OAG's October 1, 2021 review letter) demonstrates that this controversy is not ripe for this Court's review. *See* Prelim. Objs. ¶ 24.

> "The concepts of ripeness and exhaustion of administrative remedies are similar but distinct." *Merriam v. Phila*[.] *Hist*[.] *Comm*[*']n*, 777 A.2d 1212, 1219 (Pa. Cmwlth. 2001). "Ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. Exhaustion is concerned with agency autonomy." *Id.* (internal quotations omitted) (citation omitted). Whether an issue is ripe depends on whether[:] 1) the issue has been adequately developed for judicial review; and 2) what hardship the parties will suffer if review is delayed. *Id.* at 1220.

*Indep. Oil & Gas Ass'n of Pa. v. Pa. Pub. Util. Comm'n*, 789 A.2d 851, 857 n.8 (Pa. Cmwlth. 2002).

---

[22] This Court's review is limited to the Petition and its attachments. *See Foxe*. Despite that the OAG asked for the parties' willingness to meet and discuss the issues, the OAG's October 1, 2021 review letter appears to be a complete substantive review of the Ordinance. *See* Petition Ex. G. The Petition reflects that the Township responded to the OAG, *see* Petition ¶¶ 26-28; *see also* Petition Exs. H, I, but does not state whether McNew responded. In either event, although the Township has yet to reach out to the OAG to work on bringing the Ordinance into compliance with state law, the OAG's queries do not render its October 1, 2021 Ordinance review incomplete.

Section 315(b) of ACRE does not explicitly require a landowner to first seek the OAG's review under Section 314(a) of ACRE before filing an original jurisdiction action. Therefore, the fact that McNew requested the OAG's review before he filed the Petition, whether or not the OAG completed its review, and whether the OAG offered to meet with the parties to review the matter but McNew has yet to accept the offer, does not affect the ripeness of this matter under Section 315(b) of ACRE.

> As observed, *supra*, the issue does not require agency expertise or the development of a factual record but rather the reading of an unambiguous [Ordinance]. The issue has been adequately developed for this Court to consider the applicability of [ACRE] to [the Ordinance]. Further, the cost of the administrative procedure and delay before obtaining judicial review has been previously recognized as sufficient to demonstrate the existence of actual and present harm. *See Rouse & Assoc[s.]-Ship R[d.] Land L[td.] P[']ship v. P[a.] Env['t] Quality B[d.],* . . . 642 A.2d 642 . . . ([Pa. Cmwlth.] 1994). This matter is, therefore, ripe for judicial review.

*Indep. Oil & Gas Ass'n of Pa.*, 789 A.2d at 857 n.8. Accordingly, Respondents' Fourth Preliminary Objection is overruled.

## Conclusion

Based on the foregoing, Respondents' Third Preliminary Objection is sustained. Respondents' First, Second, and Fourth Preliminary Objections are overruled.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. Bruce McNew, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| East Marlborough Township and | : | |
| East Marlborough Township | : | |
| Board of Supervisors, | : | No. 29 M.D. 2022 |
| Respondents | : | |

## O R D E R

AND NOW, this 26ᵗʰ day of April, 2023, East Marlborough Township's and East Marlborough Township Board of Supervisors' (collectively, Respondents) third Preliminary Objection to R. Bruce McNew's Petition for Review is sustained. Respondents' first, second, and fourth Preliminary Objections are overruled. Respondents are directed to file an answer to the Petition for Review within 30 days of the date of this Order.

_____

ANNE E. COVEY, Judge